1  Kelly C. Hunsaker (SBN 168307 / hunsaker@fr.com)
   Enrique D. Duarte (SBN 247523 / duarte@fr.com)
2  FISH & RICHARDSON P.C.
   500 Arguello Street, Suite 500
3  Redwood City, California 94063
   Telephone: (650) 839-5070
4  Facsimile: (650) 839-5071

5  Attorneys for Defendant
   COUPA SOFTWARE INC.

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                          OAKLAND DIVISION

11  ARIBA, INC.,                      Case No. 4:12-cv-01484 PJH

12         Plaintiff,                 **COUPA'S ANSWER TO COMPLAINT
                                      AND COUNTERCLAIMS**
13         v.
                                      **DEMAND FOR JURY TRIAL**
14  COUPA SOFTWARE INC.,

15         Defendant.

16

17         Defendant Coupa Software Inc. ("Coupa") answers Plaintiff Ariba, Inc.'s ("Ariba")

18  Complaint (the "Complaint") as follows:

19         Ariba's lawsuit is an over-reaching attempt to stifle competition and impede Coupa's rise

20  to success as the leader in e-procurement services.  Coupa was founded in 2006 to transform a

21  staid e-procurement industry with a modern and innovative cloud-based alternative to traditional

22  and aging e-procurement solutions, such as those provided by Ariba.  At that time, the enterprise

23  software space was suffering from lack of innovation – the software was expensive, difficult to

24  install, required extensive training, and people hated using it.  Coupa revolutionized this space by

25  focusing on the end-user.  Coupa's solution was to empower business groups within a company

26  with a self-service requisitioning system that leveraged advances in web technologies to make e-

27  procurement as easy as shopping from home, all while helping companies enforce their spend

28  policies.  By 2012, Coupa had become the overall leader in this space, as ranked by Gartner.

With no innovative solutions of its own, Ariba has resorted to filing this lawsuit wrongly accusing Coupa of infringing a patent filed in the 1990s, a patent based on antiquated technology with exceedingly narrow claims and whose validity is highly suspect.  Coupa does not infringe – indeed its success has been due in large part to its radical new approach to e-procurement, not to using technology from the last century.  Ariba's strategy does not appear to be based on whether it wins or loses this lawsuit, but rather is based on promoting a lawsuit designed to intimidate Coupa's customers and inhibit lawful competition.  For example, on information and belief, immediately after filing this suit, Ariba marketed its lawsuit by mass-mailing its Complaint to existing and prospective customers, implying that Coupa was an infringer, and inviting them to buy from Ariba instead.  Ariba gave no factual basis for its statements about Coupa, and instead used its Complaint to over-inflate the importance and scope of its patent.  Ariba's lawsuit and its subsequent actions, designed to interfere with Coupa's economic and commercial relationships, are a misuse of its intellectual property rights.  By this answer, Coupa formally denies Ariba's accusations of infringement and counterclaims for declaratory relief as set forth below.

## I.

## THE PARTIES

1.      Coupa lacks sufficient knowledge to admit or deny the allegations in paragraph 1 of the Complaint, and therefore denies the same.

2.      Coupa admits the allegations in paragraph 2 of the Complaint.

## JURISDICTION AND VENUE

3.      Coupa admits that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      Coupa admits that its principal place of business is in San Mateo, California, which is located in the Northern District of California.  Coupa admits that it does business in this District.  Coupa denies that it has committed acts of infringement and denies each and every remaining allegation in paragraph 4 of the Complaint.

5.      Coupa admits that venue is proper in the Northern District of California.

**INTRADISTRICT ASSIGNMENT**

6.      Paragraph 6 of the Complaint is a statement of law to which no admission or denial is required.  To the extent a response is required, Coupa admits that pursuant to General Order 67, this action, as one based on patent claims, shall be randomly assigned to any judge of this Court pursuant to General Order No. 44 and Civil Local Rules 3-2 and 3-3.

**FACTUAL ALLEGATIONS**

7.      Coupa admits that prior to 1996, companies procured operating resources through paper-based methods, and that examples of such operating resources include capital goods, operational items, transportation, professional services, sub-components, and/or raw materials. Except as expressly admitted herein, Coupa denies each and every allegation in paragraph 7 of the Complaint, and further denies any characterizations and inferences that Ariba seeks to draw from its statements in paragraph 7.

8.      Coupa admits that United States Patent No. 7,117,165 ("the '165 patent") purports to be issued to Ariba by the United States Patent and Trademark Office.  Coupa denies that Ariba obtained patents on any "fundamental" e-procurement inventions and denies that the abstract ideas alleged in paragraph 8 are patentable at all.  Except as expressly admitted herein, Coupa denies each and every allegation in paragraph 8 of the Complaint, and further denies any characterizations and inferences that Ariba seeks to draw from its statements in paragraph 8.

9.      Coupa admits it was founded in 2006.  Coupa further admits it offers an e-Procurement software product, and that its product is superior to any offering provided by Ariba. Coupa lacks sufficient knowledge to admit or deny that any of Ariba's products are patented or embody its purported patents, or whether Coupa's  products directly compete with Ariba's unidentified "patented products."  Coupa denies that its software embodies any claims recited in the '165 patent or infringes the '165 patent.  Coupa's software encompasses new and novel techniques not covered or burdened by Ariba's antiquated technology.  Coupa denies each and every remaining allegation in paragraph 9 of the Complaint.

10.      Coupa denies each and every allegation in paragraph 10 of the Complaint.

**COUPA'S ANSWER TO COMPLAINT AND COUNTERCLAIMS**
Case No. 4:12-cv-01484 PJH

**ARIBA'S PURPORTED PATENT**

11.     Coupa admits that United States Patent No. 7,117,165 states on its face that it was issued on October 3, 2006, with a title of "Operating Resource Management System," and listing as purported inventors Norman Adams, Marc Brown, Brian Carlstrom, Brian Elkin, Paul Hegarty, Guy Haskin, and Boris Putanec. Except as expressly admitted herein, Coupa denies each and every allegation in paragraph 11 of the Complaint.

12.     Coupa admits that a copy of the '165 patent appears to be attached to the Complaint as Exhibit A. Coupa lacks sufficient knowledge to admit or deny the remaining allegations in paragraph 12 of the Complaint, and therefore denies the same.

## COUNT I

### (Direct Infringement of United States Patent No. 7,117,165)

13.     Coupa hereby incorporates the foregoing paragraphs of this Answer and restates them as if they were fully written herein.

14.     Coupa denies the allegations in paragraph 14 of the Complaint.

15.     Coupa denies the allegations in paragraph 15 of the Complaint.

## COUNT II

### (Contributory Infringement of United States Patent No. 7,117,165)

16.     Coupa hereby incorporates the foregoing paragraphs of this Answer and restates them as if they were fully written herein.

17.     Coupa denies the allegations in paragraph 17 of the Complaint.

18.     Coupa denies the allegations in paragraph 18 of the Complaint.

19.     Coupa denies the allegations in paragraph 19 of the Complaint.

## II.

## AFFIRMATIVE DEFENSES

In addition to its Answer to the Complaint as set forth above, Coupa asserts the following affirmative defenses and reserves the right to amend its Answer to assert other affirmative defenses as they become known through the course of discovery:

**FIRST AFFIRMATIVE DEFENSE**

20.     Coupa does not infringe and has not infringed (either directly, contributorily, or by inducement) any claim of the '165 patent.

**SECOND AFFIRMATIVE DEFENSE**

21.     One or more asserted claims of the '165 patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including without limitation §§ 101, 102, 103, and 112.

**THIRD AFFIRMATIVE DEFENSE**

22.     Ariba's claims are barred by the doctrine of patent misuse and/or bad faith enforcement of the '165 patent against Coupa.

**FOURTH AFFIRMATIVE DEFENSE**

23.     Ariba is barred by the doctrine of unclean hands from enforcing the '165 patent against Coupa.

**FIFTH AFFIRMATIVE DEFENSE**

24.     Ariba is barred by the doctrine of laches from enforcing the '165 patent against Coupa.

**SIXTH AFFIRMATIVE DEFENSE**

25.     Ariba is estopped, based on statements, representations and admissions made during prosecution of the patent application resulting in the '165 patent, and during prosecution of related patent applications, from asserting any interpretation of any of the patent claims that would be broad enough to establish any alleged infringement by Coupa.

**SEVENTH AFFIRMATIVE DEFENSE**

26.     Ariba's Complaint fails to state a claim upon which relief can be granted.

**<u>PLAINTIFF'S PRAYER FOR RELIEF</u>**

Coupa denies that Ariba is entitled to any relief requested or to any relief whatsoever.

**COUPA'S ANSWER TO COMPLAINT AND COUNTERCLAIMS**
Case No. 4:12-cv-01484 PJH

## III.

## COUNTERCLAIMS

Coupa hereby asserts the following counterclaims against Ariba.

27.     Coupa is a Delaware corporation with its principal place of business at 100 S. Ellsworth Avenue, San Mateo, CA 94401.

28.     Ariba alleges to be Delaware corporation having its principal place of business at 910 Hermosa Court, Sunnyvale, CA 94085.

29.     Ariba alleges to be the owner of all right, title and interest in and to the '165 patent.

## JURISDICTION

30.     These counterclaims for declaratory judgments of invalidity and non-infringement of the '165 patent arise under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and the Patent Act of the United States, 35 U.S.C. § 101, *et seq.*, including but not limited to §§ 101, 102, 103, and 112.

## VENUE

31.     Venue over these counterclaims is proper in this District Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, among other reasons, Ariba has brought its complaint for infringement of the '165 patent in this court.

## INTRADISTRICT ASSIGNMENT

32.     Pursuant to General Order 67, this action, being a declaratory judgment action based on patent claims, shall be randomly assigned to any judge of this Court pursuant to General Order No. 44 and Civil Local Rules 3-2 and 3-3.

## COUPA REVOLUTIONIZED ELECTRONIC PROCUREMENT, THREATENING ARIBA'S MARKET DOMINANCE

33.     Six years ago, Ariba was one of the leading electronic procurement ("e-procurement") providers in a market that had grown stale from lack of innovation.  Companies looking for an e-procurement solution had little choice but to resort to using expensive software solutions that were difficult to install, that required extensive training, and worst of all, that people

hated using.  On information and belief, this mattered little to Ariba; the status quo meant its continued success.

34.     Enter Coupa, founded in 2006.  Its founders recognized that shopping online at home was easy and thought, why could that experience not be carried over to the corporate world?  And so Coupa was born with one focus in mind – the end user.

35.     The Coupa experience is simple and intuitive, familiar to those who have shopped online.  For example, an employee looking to procure a laptop can log into Coupa and search for one as easily as performing an Internet search.



36.     The employee then simply selects the desired laptop from the list of results and adds it to his shopping cart.



37.     The employee can keep adding items to his shopping cart, and once he is done, he reviews his shopping cart and enters in the billing and shipping information.  Coupa provides employees with a familiar experience much like shopping online from home.

**COUPA'S ANSWER TO COMPLAINT AND COUNTERCLAIMS**
Case No. 4:12-cv-01484 PJH



38.    With its user-centric focus, it is no surprise that Coupa has been met with widespread praise in the industry.

39.    For example, in a September 2011 research report covering the E-Procurement Market and Vendor Landscape, Gartner ranked the upstart Coupa, not Ariba, with top five rankings for its ease of use, technology platform, time to value and customer satisfaction, and Coupa received the highest combined score for its technology platform and overall solution.

40.    Coupa has its own innovative technologies and business model to thank – a model that allows companies to adopt Coupa's services with little to no startup costs.  "Coupa is a representation of a novel company model, centered on arranging services from the cloud." http://tinyurl.com/74dbgjx. "Coupa, in fact, represents a new model of company, brokering services from the cloud and offering packages of services to their respective markets." http://tinyurl.com/7bxn944.

41.    With Coupa's true cloud solution, all you need is Internet access and a web browser.  "[T]he simple genius of Coupa is that they came up with a usability philosophy designed to maximize the transactional capture of spend throughout an enterprise through a single system -- indirect, direct, services or otherwise. It's that simple."  http://tinyurl.com/6noam4d.  Gone are the old days of having to buy before you try, of installing expensive software, training employees on it, and hoping they will adopt it.  Perhaps more importantly, gone is the antiquated model that helped Ariba maintain a stranglehold on the market because companies would rather go with a

well-known vendor like Ariba than risk investing resources into lesser known vendors.

42.     After Coupa announced its annual results in January 2012, Seeking Alpha.com posted an article titled "Competitors Converge Around Ariba" stating that Ariba's "customers were displeased with its network fee based strategy," and that "the displeasure has grown and appears to be entering the beginning stages of revolt."   http://tinyurl.com/6o54j48.   "[Ariba's] technology is at risk of becoming antiquated by newer cloud-based architectures.  Indeed, privately-held Coupa has embraced such cutting-edge technologies and now threatens [Ariba's] dominance."  *Id.*   "Increasingly, it appears that Coupa is winning in areas where [Ariba] was once unstoppable."  *Id.*

43.     Others in the press also noticed that Ariba's stranglehold was loosening due to Coupa's superior solution.  Also in January, SpendMatters.com posted an article titled "Super Coupa! Annual Results Impress for e-Procurement Provider," explaining that Coupa's "innovative, easy to adopt / use purchase to pay and now spend analytics software . . . has been making serious waves for the last couple of years in the US and now increasingly in Europe." http://tinyurl.com/7gr4enb.

44.     And the next day, SpendMatters.com posted another article titled "Coupa's Stellar 2011 Growth is Proof that P2P Fresh Thinking is Thriving," stating that "[f]or a while, we used to consider Ariba the bellwether vendor in the P2P sector ...."   http://tinyurl.com/6noam4d.   "But when it comes to certain vendors, overall growth can transcend existing market segments and trends.  Coupa clearly falls into this class, given their fresh thinking in P2P.  Its our view that their downright exceptional (for a SaaS/cloud business model) results for 2011 are merely an outgrowth of this."  *Id.*   "Coupa is playing in a league of its own."  *Id.*

45.     Coupa's innovative technology, novel business model, customer-friendly interface, press acclaim, and rapid ascent to become the number one ranked e-procurement vendor was, on information and belief, too much for Ariba to bear.  And so awoke the sleeping giant.

## ARIBA RESPONDS TO COUPA'S SUCCESS WITH
## AN INVALID AND UNINFRINGED PATENT

46.     Rather than compete with Coupa on the merits of its technology in the marketplace, Ariba is trying to over-extend a narrow patent beyond its scope and use intimidation with Coupa's customers to slow Coupa down, launching what appears to be a letter writing campaign against Coupa's existing and prospective customers.

47.     Having failed to keep up with Coupa's pace of innovation, Ariba dusted off a narrow patent filed in the late 1990s, declared it to be "fundamental," and sprung it on Coupa in this lawsuit.  Ariba did not do this when Coupa's e-procurement solution was launched in October 2007.  It did so only when, on information and belief, Ariba realized that Coupa had changed the playing field and become a competitive threat, not because it is the same as Ariba, but because it is disruptively different.

48.     Indeed, before filing the lawsuit, Ariba never bothered to even notify Coupa of its so-called fundamental '165 patent, nor has that patent ever before been asserted by Ariba against anyone.  Its scope and validity have been entirely untested until now.

49.     The real character of, and motive behind, Ariba's suit can be seen in the actual substance of the asserted patent, which amounts to nothing more than an electronic way of performing well-known business processes for purchasing products that were used long before the patent was filed.

50.     The Patent Office recognized this and initially rejected Ariba's application five times as obvious in view of U.S. Patent Nos. 5,319,542 (King), 5,758,327 (Gardner), and 5,315,504 (Lemble).

51.     The King prior art patent in particular posed a problem for Ariba because it disclosed generating a requisition and communicating an order to a supplier as a purchase order [Ex. A (Excerpts from the '165 patent file history; 2002-07-15 Rejection, at 6)], and disclosed "automat[ing] all manual transactions in the requisition process" [*id.* (2004-09-13 Rejection, at 13 (emphasis removed))].  Ariba admitted that "King discloses a system for electronically ordering

items from suppliers" and that "Gardner discloses an electronic requisition method." [*Id.* (2005-01-19 Am., at 14).]

52.     Ariba first tried to get around the prior art by drastically narrowing its claims to require a "commentary entry" in the approval process, something Ariba argued was not disclosed in the prior art. [*Id.* (2002-10-21 Am., at 14).] When that failed, Ariba further narrowed its claims by requiring the generation of "electronic receipt[s]." [*Id.* (2003-10-02 Am., at 3).] Ariba argued that the electronic receipts were "*an improvement* to prior art electronic procurement/requisition systems and overcome the notification in 'paper form' as disclosed in the office action." [*Id.*]

53.     The Patent Office was not fooled. After scolding Ariba for distorting what the Patent Office had already said, the Examiner reiterated that "King, a valid US patent, <u>automates</u> <u>**all**</u> <u>manual transactions</u> in the requisition process," including all messages and receipts. [*Id.* (2003-12-31 Rejection, at 14).] It rejected Ariba's amendment and noted that "[i]t was well known to one of ordinary skill that users often acknowledge that they have received goods or services at various points in a requisition process by notifying appropriate persons." [*Id.* (2003-12-31 Rejection, at 3).] It further explained that "[o]ne of ordinary skill at the time the invention was made would have been motivated to include electronic 'receipts' or 'desktop receipts' for the obvious reason that in accounting, such receipts are a common, ordinary item in everyday business." [*Id.* (2003-12-31 Rejection, at 3-4).]

54.     Ariba persisted, and added yet another limitation, this one requiring a step of "deciding between at least one of a purchase card module, a direct order module, and a purchase order module to submit the electronic requisition form for fulfillment." [*Id.* (2005-01-19 Am., at 3, 10, 12).] It managed to convince the Patent Office that this "deciding" step was novel, arguing that the prior art did not disclose a "decision making process . . . to choose a preferred ordering method other than through a purchase order." [*Id.* (2005-01-19 Am., at 14-15).] Ariba argued that "nothing in [the prior art] discloses or suggests choosing between multiple order modules to fulfill an order." [*Id.* (2005-01-19 Am., at 20).]

55.     Put another way, according to what Ariba told the Patent Office, the purported

novelty of its "invention" lies in the narrow and utterly unremarkable point of *deciding* between three ordering methods – purchase orders, direct orders, and purchase cards.  But there was nothing new about the ordering methods or deciding between them, a fact that Ariba failed to disclose to the Patent Office.

56.     For example, purchase cards date back to at least 1986, when several agencies of the Federal government pilot tested a purchase card.  [Ex. B (GAO, Report to Congressional Committees, "Acquisition Reform, Purchase Card Use Cuts Procurement Costs, Improves Efficiency," Aug. 1996), at 2.]  "In 1989, the purchase card was made available governmentwide through a competitively awarded contract with Rocky Mountain BankCard System."  [*Id.*, at 3.]

57.     Federal government agencies who participated had to choose between using a purchase card, a purchase order, and/or blanket purchase agreements – it did not simply use one ordering method to the exclusion of others.  [*See* Ex. B, at 3-4, 8.]  Indeed, the GAO Report specifically stated that "some studies noted that the purchase card does not replace all transactions made with any one procurement method, such as purchase orders, but instead usually partially replaces transactions previously made by several different methods, such as purchase orders, imprest funds, and blanket purchase agreements."  [*Id.*, at 4.]

58.     The federal agencies even set procedures, such as spending limits, single purchase limits, and monthly limits, as well as limiting which persons can use the cards, to help them decide when to use a purchase card over a different ordering method.  [*Id.*, at 9.]

59.     The federal government's procurement procedures highlight just one flaw in Ariba's patent claims – there is simply nothing novel about "deciding" between different ordering methods because humans have long performed this step in their mind.

60.     Ariba may argue that its claims are drawn to an *electronic* way of performing the "deciding" step.  However, a claim whose supposed novelty hinges on electronically performing a step that a human mind can perform is invalid.  *See, e.g.*, *Mayo Collaborative Svcs. v. Prometheus Labs., Inc.*, ---- U.S. ----, 132 S.Ct. 1289 (2012); *Bilski v. Kappos*, 561 U.S. ----, 130 S.Ct. 3218 (2010); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1376 (Fed. Cir. 2011)

**COUPA'S ANSWER TO COMPLAINT AND
COUNTERCLAIMS**
Case No. 4:12-cv-01484 PJH

(invalidating software claims because "one could mentally perform the fraud detection method that underlies both claims 2 and 3 of the '154 patent, as the method consists of only the general approach of obtaining information about credit card transactions utilizing an Internet address and then using that information in some undefined manner to determine if the credit card transaction is valid.").

61.     Ariba's lawsuit is also meritless because the patent is directed to a very narrow, and old, set of business processes that Coupa does not use.  Indeed, Coupa received press acclaim not because it uses decades-old technology, but because it transformed the e-procurement experience with its innovative solutions.

62.     Specifically, Coupa's technology does not satisfy each of the limitations in the patent's three independent claims (claims 1, 35, and 41), so it cannot infringe those claims or any of the remaining dependent claims.

63.     Claim 1 is drafted using "means-plus-function" language (e.g., "means for [performing a function]").  Under patent law, such claims only cover those specific algorithms disclosed in the patent, and structural equivalents, that performed the recited function.  When an algorithm is not adequately disclosed, the claim is invalid as indefinite.  While claim 1 is indeed invalid because the patent fails to disclose an adequate algorithm for one or more of the "means-plus-function" limitations, the claim is drafted so narrowly in so many places that there are numerous reasons that Coupa plainly does not infringe.

64.     Claims 35 and 41 fare no better.  These claims were added by Ariba at the end of the prosecution history and claim abstract ideas used in procurement for decades, re-framed as computer instructions.  As with claim 1, claims 35 and 41 incorporate the various narrowing amendments made in response to the King patent and other prior art noted above.  Claims 35 and 41 are notable in another respect.  They recite a "machine-readable medium having a set of executable instructions to cause a machine to perform a method for facilitating electronic commerce, the method comprising: . . . ***transmitting the*** electronic ***requisition form*** directly to at least one of the plurality of suppliers…" (emphasis added.)  The claims are very specific – the

requisition form, ***not*** the purchase order, is what must be transmitted to suppliers.  Coupa does not do that.  Coupa's solution processes requisition forms and uses them to create one or more purchase orders, but it is always the purchase orders and ***not*** the requisition form that are electronically transmitted to suppliers.  While this is just one reason Coupa does not infringe claims 35 and 41, it is a stark difference and a glaring weakness that Ariba will be unable to overcome.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,117,165)

65.     Coupa restates and incorporates by reference the allegations in paragraphs 1-65.

66.     An actual and justiciable controversy exists between Coupa and Ariba as to the non-infringement of the '165 patent, as evidenced by Ariba's complaint and Coupa's answer to the complaint, as set forth above.

67.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Coupa requests the declaration of the Court that Coupa does not infringe and has not infringed any claim of the '165 patent.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment of Invalidity of U.S. Patent No. 7,117,165)

68.     Coupa restates and incorporates by reference the allegations in paragraphs 1-68.

69.     An actual and justiciable controversy exists between Coupa and Ariba as to the invalidity of the '165 patent, as evidenced by Ariba's complaint and Coupa's answer to the complaint, as set forth above.

70.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Coupa requests the declaration of the Court that one or more claims of the '165 patent are invalid under the Patent Act, 35 U.S.C. § 101, *et seq.*, including, but not limited to, §§ 101, 102, 103, and 112.

## JURY DEMAND

 Coupa hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

Wherefore, Coupa prays for judgment with respect to Ariba's Complaint and Coupa's Answer and the above Counterclaims as follows:

a.  that Coupa's technology is not covered by any valid and enforceable claim of the '165 patent, and that Coupa does not infringe (directly or indirectly) any valid and enforceable claim of the '165 patent;

b.  that the claims of the '165 patent are invalid;

c.  that Ariba's complaint be dismissed with prejudice;

d.  that Ariba takes nothing by reason of its complaint;

e.  that this case is "exceptional" pursuant to 35 U.S.C. § 285, entitling Coupa to an award of its reasonable attorneys' fees;

f.  that Coupa be awarded its reasonable costs incurred in this action; and

g.  for such other relief as this Court deems just, reasonable and proper.


Dated:  May 14, 2012                          Respectfully submitted,


                                              FISH & RICHARDSON P.C.


                                              By:  */s/ Kelly C. Hunsaker*
                                                   Kelly C. Hunsaker

                                              Attorneys for Defendant
                                              COUPA SOFTWARE INC.


**COUPA'S ANSWER TO COMPLAINT AND
                                              COUNTERCLAIMS**
                                              Case No. 4:12-cv-01484 PJH