Robert T. Haslam (SBN 71134 / rhaslam@cov.com)
Amy K. Van Zant (SBN 197482 / avanzant@cov.com)
Hyun S. Byun (SBN 281753 / hbyun@cov.com)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Robert D. Fram (SBN 126750 / rfram@cov.com)
Christine Saunders Haskett (SBN 188053 / chaskett@cov.com)
Matthew D. Kellogg (SBN 280541 / mkellogg@cov.com
Tess A. Hamilton (SBN 279738 / tahamilton@cov.com)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Attorneys for Plaintiff/Counter-defendant
ARIBA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ARIBA, INC., <br><br> Plaintiff/Counter-defendant, <br><br> v. <br><br> COUPA SOFTWARE INC., <br><br> Defendant/Counterclaimant. | Case No. 3:12-cv-01484 WHO <br><br> **ARIBA, INC.'S OPENING CLAIM CONSTRUCTION BRIEF** <br><br> Date: TBD <br> Time: TBD <br> Place: Courtroom 2 <br> Judge: Hon. William H. Orrick <br><br> Complaint Filed: March 23, 2012 <br> Trial Date: Not Set <br><br> JURY TRIAL DEMANDED |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   THE COURT SHOULD ADOPT ARIBA'S PROPOSED CONSTRUCTIONS ............. 1

      A.    Order Generating Means (35 U.S.C. § 112, ¶6 Agreed Term)............................. 1

            1.    Order Generating Means:  Function ............................................................ 1

            2.    Order Generating Means:  Corresponding Structure ................................. 5

      B.    Deciding Between at Least One of a Purchase Card Module, a Direct
            Order Module, and a Purchase Order Module........................................................ 7

      C.    Approval Path Determining Means (35 U.S.C. § 112, ¶ 6 Agreed Term).............. 8

            1.    Approval Path Determining Means:  Scrivener's error ............................. 8

            2.    Approval Path Determining Means:  Function........................................... 9

            3.    Approval Path Determining Means:  Corresponding Structure................ 11

      D.    Approval Path Handling Means (35 U.S.C. § 112, ¶6 Agreed Term).................. 12

            1.    Approval Path Handling Means:  Function .............................................. 12

            2.    Approval Path Handling Means:  Corresponding Structure .................... 14

      E.    Electronic Receipt Generating Means (35 U.S.C. § 112, ¶6 Agreed Term)......... 15

            1.    Electronic Receipt Generating Means:  Function.................................... 15

            2.    Electronic Receipt Generating Means:  Corresponding Structure............ 17

      F.    Requisition Record Generating Means (35 U.S.C. § 112, ¶6 Agreed
            Term) ..................................................................................................................... 19

      G.    Purchase Order Module ......................................................................................... 21

            1.    The "ERP only" dispute............................................................................. 22

            2.    The "fully approved requisition" dispute ................................................. 22

      H.    Direct Order Module.............................................................................................. 23

      I.    Electronic Requisition Form.................................................................................. 24

III.  CONCLUSION............................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acromed Corp. v. Sofamor Danek Grp., Inc.,*
253 F.3d 1371 (Fed. Cir. 2001) ................................................................... 18

*Asyst Techs. Inc. v. Empak, Inc.,*
268 F.3d 1364 (Fed. Cir. 2001) ................................................................... 10

*Blackboard Inc. v. Desire2Learn Inc.,*
574 F.3d 1371 (Fed. Cir. 2009) .................................................... 5, 7, 11, 14

*DSW, Inc. v. Shoe Pavilion,*
537 F.3d 1342, 1347 (Fed. Cir. 2008) .......................................................... 23

*Griffin v. Bertina,*
285 F.3d 1029 (Fed. Cir. 2002) ................................................................... 13

*Hoffer v. Microsoft Corp.,*
405 F.3d 1326 (Fed. Cir. 2005) ..................................................................... 9

*Intergraph Hardware Techs. Co. v. Toshiba Corp.,*
508 F. Supp. 2d 752 (N.D. Cal. 2007) ......................................................... 13

*Inventio AG v. ThyssenKrupp Elevator Am. Corp.,*
649 F.3d 1350 (Fed. Cir. 2011) ..................................................................... 7

*JVW Enters., Inc. v. Interact Accessories, Inc.,*
424 F.3d 1324 (Fed. Cir. 2005) ..................................................................... 4

*Kara Tech. Inc. v. Stamps.com Inc.,*
582 F.3d 1341 (Fed. Cir. 2009) ....................................................... 22, 23, 24

*In re Katz Interactive Call Processing Patent Litig.,*
639 F.3d 1303 (Fed. Cir. 2011) ..................................................................... 2

*Kistler Instrumente AG. v. United States,*
628 F.2d 1303 (Ct. Cl. 1980) ......................................................................... 3

*Massachusetts Inst. of Tech. and Elecs. for Imaging, Inc. v. Abacus Software,*
462 F.3d 1344 (Fed. Cir. 2006) ..................................................................... 7

*Micro Chem., Inc. v. Great Plains Chem. Co.,*
194 F.3d 1250 (Fed. Cir. 1999) ................................................................. 4, 19

*Oatey Co. v. IPS Corp.,*
514 F.3d 1271 (Fed. Cir. 2008) ................................................................. 2, 22

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005) ............................................................... 13, 24

*Rhine v. Casio, Inc.,*
183 F. 3d 1342 (Fed. Cir. 1999) ..................................................................... 2

*Sun Microsystems, Inc. v. Network Appliance, Inc.*,
 710 F. Supp. 2d 925 (N.D. Cal. 2008) ............................................................. 10, 13

*SuperGuide Corp. v. DirecTV Enters., Inc.*,
 358 F.3d 870 (Fed. Cir. 2004) ................................................................................ 3

**Statutes**

35 U.S.C. § 112, ¶6 .................................................................................................. *passim*

**Other Authorities**

MANUAL OF PATENT EXAMINING PROCEDURE
 (8th ed. 2001) .......................................................................................................... 9

# I. INTRODUCTION

Ariba's U.S. Patent No. 7,117,165 ("the '165 Patent") claims a system for electronic procurement that improves over prior art systems by taking a previously fragmented ordering and payment process within an organization and making it user-friendly and efficient. Ariba's invention does not merely computerize off-line, paper-based procurement processes. It creates a comprehensive software-based procurement system that, among other things, automatically decides what type of ordering module should be used to generate an individual order. The system makes those decisions based, in part, on supplier ordering requirements at a granular, line-item-by-line-item basis rather than for the requisition as a whole. The system flexibly deploys various ordering modules whether or not a legacy Enterprise Resource Planning ("ERP") software system is used. Organizations thereby are not forced to make a choice between paying for an expensive "one-off," custom-tailored system or settling for a "one-size fits most" system designed to work with common ERP configurations.

# II. THE COURT SHOULD ADOPT ARIBA'S PROPOSED CONSTRUCTIONS

## A. Order Generating Means (35 U.S.C. § 112, ¶6 Agreed Term)[1]

### 1. Order Generating Means: Function

| order generating means for deciding between at least one of a purchase card module, a direct order module, and a purchase order module to submit the requisition for fulfillment by a supplier (Claim 1) | |
|---|---|
| Ariba's construction | Coupa's construction |
| Deciding between a set of ordering modules, the set including at least one purchase card module, one direct order module, and one purchase order module, where the chosen module or modules is/are used as part of the process to submit an order for one or more line items. | A computer choosing only one module to submit the requisition for fulfillment by a supplier, wherein the computer chooses from among at least a purchase card module, a direct order module, and a purchase order module. |

The parties agree that the function of the order generating means is deciding between (or choosing from) a set of ordering modules, the set including at least one purchase card module

---

[1] Where noted, the parties agree that the term in question is subject to 35 U.S.C. § 112, ¶ 6 (also known as a "means-plus-function" term).

("p-card module"), one direct order module ("DO module"), and one purchase order module ("PO module"). Where the parties diverge is over whether the function is limited to selecting "only one" of the ordering modules per requisition. The specification, however, describes instances in which more than one ordering module can be chosen for a particular requisition, and Coupa's proposed construction would impermissibly read out these disclosed embodiments. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1324 (Fed. Cir. 2011) (there is a strong presumption against any claim construction that reads out a disclosed embodiment); *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276-77 (Fed. Cir. 2008) (same).

The order-generating means has one purpose: to identify at least one ordering module that is available for each line item on a requisition form. The specification describes a process of checking the requisition to "determine which suppliers are involved, determine the preferred method of ordering for those suppliers, and use that method for transmitting the requisition to the supplier." Declaration of Michael I Shamos, Ph.D. J.D. ("Shamos Decl."), Ex. B ("'165 Patent") at 4:49-53. That process of checking the involved supplier preferences to decide which ordering method(s) (modules) to use is distinct from the functionality of the ordering modules themselves: "The pieces of the system used to transfer orders for fulfillment are known as the ordering modules 130 (FIG. 1) (see also, FIG. 7). [¶] There are three ordering modules 702 (see FIG. 7): a Purchasing Card module, a Direct Order module, and a Purchase Order module." *Id.* at 4:54-59. The claim language requires simply that one or more ordering modules are selected by the order generating means, as reflected in Ariba's proposed construction.

Coupa, however, contends that the proper construction of the order generating means function is, "a computer choosing only one module to submit the requisition for fulfillment by a supplier . . . ." Shamos Decl., Ex. E, Patent Local Rule 4-3 Statement Ex. A ("PLR 4-3") at 1 (ECF No. 39). Coupa's proposed construction limiting the selection to "only one" module is contrary to the plain language of the claim and two express disclosures in the specification.

*Plain language of the limitation*. Coupa misreads the grammar of the limitation, and in three separate ways. First, the phrase "at least one of" means "one or more than one." *See Rhine v. Casio, Inc.*, 183 F. 3d 1342, 1345 (Fed. Cir. 1999) ("Use of the phrase 'at least one'

2

means that there could be only one or more than one.") *citing Kistler Instrumente AG. v. United States,* 628 F.2d 1303, (Ct. Cl. 1980) ("Anyone with even the most rudimentary understanding of the English language understands 'at least one piezo-electric crystal means lodged within said component means,' to mean one or more crystals.").

Second, the term "at least one of" modifies the different categories of ordering module types—modules that are described with the conjunctive term "and," *i.e.,* p-card modules, DO modules, and PO modules. Thus, the set from which the choice is made by the order generating means must consist of at least one p-card module, at least one DO module, <u>and</u> at least one PO module; it is not a set that contains only one module (*i.e.*, either a p-card module, a DO module, <u>or</u> a PO module). Where "at least one" prefaces a list set forth in the conjunctive manner, it cannot be limited to one of the items on the list. *See SuperGuide Corp. v. DirecTV Enters., Inc.,* 358 F.3d 870, 886 (Fed. Cir. 2004) (citing Strunk & White, *The Elements of Style,* in concluding that the term "at least one of," followed by a list of categories in the conjunctive requires one of each kind of item listed—*i.e.,* at least one of X, Y, <u>and</u> Z means "at least one of X," "at least one of Y," <u>and</u> "at least one of Z," and not "at least one of X, Y," <u>or</u> Z").

Third, the claim language imposes no restriction as to how many modules are ultimately selected so long as one or more modules are selected. Given that the selection set includes more than one ordering module, the net effect of this unrestricted choice is that more than one module can be selected.

*Specification - the multiple line item disclosure.* The specification teaches that a requisition may contain multiple line items, with different line items to be ordered from different suppliers. The specification further teaches that there can be a different ordering module for each line item, particularly in the case in which multiple suppliers are involved. *See* '165 Patent at 7:36-37 ("A requisition can contain any number of individual line items."); 8:53-56 ("After creating a requisition, the employee can add any number of products and services to it, as line items of the requisition."); and 21:7-14 (describing checking item and supplier profiles for preferred ordering method for each line item); *see also generally* Shamos Decl., ¶ 21.

For example, a first line item might be coming from a supplier with whom there is a direct order agreement, and therefore a DO module may be the preferred ordering method for that supplier. The same requisition might include a second line item coming from a second supplier with whom there is no direct order agreement, and so a PO module might be designated as the ordering module for that second line item. *See, e.g.,* Shamos Decl., ¶¶ 41-45. In this scenario, multiple ordering modules would—by necessity—need to be selected to fulfill the same requisition because the two different suppliers for the line items had different ordering requirements.

*Specification - the single line item embodiment.* The specification discloses that the system can use multiple ordering modules to perform different functions in fulfilling an order for even a single line item. The specification discloses an embodiment in which a p-card module is chosen together with either a DO module or a PO module. *See generally* '165 Patent at 19:38-20:22. In this particular embodiment, a p-card module is the payment mechanism for fulfilling the order and a DO or PO module is the mechanism for generating the order form for transmittal to the supplier. *Id.*; *see also id.* at 20:64-21:35 (DO and PO modules are used to generate and communicate orders). Hence, while the claim requires that at least one ordering module can be selected to generate an order for a line item, the specification shows that sometimes more than one module may be necessary to generate an order for a single line item.

Coupa's proposed function would read the disclosure that there can be multiple line items per requisition, each with a different preferred ordering module, or a single line item with multiple ordering modules, right out of the specification by limiting the selection of the ordering means to "only one" ordering module per requisition. Indeed, in this regard, Coupa's proposed restriction that "only one" module can be selected is "a function different from that explicitly recited in the claim" and, accordingly, should be rejected as a matter of law. *See JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1331 (Fed. Cir. 2005) (quoting *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999)).

## 2. Order Generating Means: Corresponding Structure

| order generating means for deciding between at least one of a purchase card module, a direct order module, and a purchase order module to submit the requisition for fulfillment by a supplier (Claim 1) | |
|---|---|
| Ariba's construction | Coupa's construction |
| [1] "For each fully approved requisition, [the system] verifies whether a p-card can be used for this purchase: Ensure that the supplier accepts p-cards. If not, chooses a different ordering module." '165 Patent at 20:5-9.<br><br>[2] "[The system] [c]hecks that the transfer method has been designated for direct order in the item template. If neither the purchase order (PO) or DO order module has been designated in the item template then the supplier profile will be checked for the transfer method. If the supplier profile indicates direct order, then that is the method. Otherwise, it is treated as a PO." *Id.* at 21:7-14. *See also id.* at 4:49-59. | There is insufficient structure under *Blackboard Inc. v. Desire2Learn Inc.*, 574 F.3d 1371 (Fed. Cir. 2009), to support the recited function. |

Turning to the corresponding structure, the specification delineates a two-part algorithm within the portion of the specification entitled "Ordering Modules" that is clearly linked to the identified function of choosing at least one ordering module for each line item in a requisition record. This section of the specification describes an algorithm for (1) checking whether a p-card module can be used; and (2) further determining whether a DO module or a PO module is to be used.

*The P-card selection sub-algorithm.* The algorithm for deciding whether a p-card is available for use to order a particular line item is as follows:

> For each fully approved requisition, [the system] verifies whether a p-card can be used for this purchase: Ensure that the supplier accepts p-cards. If not, chooses a different ordering module.

'165 Patent at 20:5-8. Thus, the specification describes a simple Boolean algorithm—either the supplier accepts p-cards or it does not. A flow chart depicting this algorithm is shown in Dr. Shamos' declaration at ¶ 26.

This algorithm disclosed in the specification at 20:5-8 is clearly linked to the function of "deciding between" the ordering modules to use to submit an order for a line item insofar as it

describes confirming that a p-card <u>can</u> be used (20:5-7) and "choos[ing] a different ordering module" if it cannot be used (20:7-8).  This remains true even if the code for the algorithm for the order generating means is also used as part of the p-card module.  Put simply, in software, the functions in one module can call functions in another module to accomplish an objective.  As a matter of logic—and the express disclosure in the specification—the system first must confirm that a supplier accepts p-cards (through running the order generating means algorithm) before it can use the p-card module to verify that the p-card may actually be used for a particular purchase.

*The PO/DO selection sub-algorithm.*  The system also determines whether a DO module or a PO module should be used, either in addition to a p-card module (if indicated) or alone.[2]  The algorithm for further deciding whether to use a DO module or a PO module to generate and communicate the order is described as:

> [The system] [c]hecks that the transfer method has been designated for direct order in the item template.  If neither the purchase order (PO) or DO order module has been designated in the item template then the supplier profile will be checked for the transfer method.  If the supplier profile indicates direct order, then that is the method.  Otherwise, it is treated as a PO.

'165 Patent at 21:7-14.

Under this portion of the order generating means algorithm, if the item or supplier profile for a line item indicates that a DO module should be used, a DO module is selected; if not, a PO module is selected instead.  *Id.*  This second sub-algorithm can involve two levels of checking, first at the item level then at the supplier level.  *Id.*  A flow chart depicting this sub-algorithm is shown in Dr. Shamos' declaration at ¶ 33.

*The combination of the two sub-algorithms.*  Given that the two sub-algorithms are independent of each other, the system potentially can choose a p-card module together with

---

[2] This portion of the order generating means algorithm is described under the "Direct Orders" heading within the "Ordering Modules" section of the specification.

either a DO module or a PO Module (but not with both) for ordering a line item. *See, e.g.,* Shamos Decl., ¶ 36 (illustrative flow chart). In addition, the system can choose either a DO module or a PO module (but not both) for ordering a line item. *See generally* Shamos Decl., ¶¶ 23(c) and 27.

Thus, the '165 Patent specification discloses within the heading "Ordering Modules" two specific "if-then" algorithms that together comprise the structure for the order generating means algorithm.

**B. Deciding Between at Least One of a Purchase Card Module, a Direct Order Module, and a Purchase Order Module**

| deciding between at least one of a purchase card module, a direct order module, and a purchase order module to submit the electronic requisition form for fulfillment (Claims 35 and 41) | |
|---|---|
| Ariba's construction | Coupa's construction |
| Deciding between a set of ordering modules, the set including at least one purchase card module, one **direct order module**, and one **purchase order module**, where the chosen module or modules is/are used as part of the process to prepare an order for one or more line items. | This claim term is subject to 35 U.S.C. § 112 (6). <br><br> Function: A computer choosing only one module to submit the electronic requisition form for fulfillment, wherein the computer chooses from among at least a purchase card module, a direct order module, and a purchase order module. <br><br> Structure: There is insufficient structure under Blackboard Inc. v. Desire2Learn Inc., 574 F.3d 1371 (Fed. Cir. 2009), to support the recited function. |

The most fundamental dispute regarding this term is whether it is subject to 35 U.S.C. § 112, ¶ 6. Notably, unlike the "order generating means" term in Claim 1, the "deciding between" claim term in Claims 35 and 41 does not use the word "means," raising a "strong" presumption against applying § 112, ¶ 6 that is "not readily overcome." *See Inventio AG v. ThyssenKrupp Elevator Am. Corp.*, 649 F.3d 1350, 1356 (Fed. Cir. 2011); *Massachusetts Inst. of Tech. and Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1356 (Fed. Cir. 2006) ("[W]e have seldom held that a limitation not using the term 'means' must be considered to be in a means-plus-function form, and the circumstances must be [unusual] to overcome the presumption.") (alterations in original) (internal quotation marks omitted).

Consistent with this term not being subject to 35 U.S.C. § 112, ¶ 6, Ariba's proposed construction follows the plain language of the claim term and for the same reasons as discussed *supra* in Part II.A.1 with respect to the Claim 1 "order generating means" function. This term requires only that the system make a decision to use one or more of the ordering modules from the set of at least one p-card module, at least one DO module, and at least one PO module.

As the "deciding between" term of Claims 35 and 41 is not subject to § 112, ¶ 6, the only construction of "deciding between" that is necessary is the construction of the phrase itself; function and corresponding structure need not be separately delineated.

### C. Approval Path Determining Means (35 U.S.C. § 112, ¶ 6 Agreed Term)

The parties' disputes regarding this claim term are whether (1) a scrivener's error renders the function of the claim unintelligible; (2) the function of the term includes the "wherein" clause of the claim limitation; and (3) there is a structure disclosed in the specification that is clearly linked to the function.

#### 1. Approval Path Determining Means: Scrivener's error

Claim 1 contains an obvious typographical error in the "approval path determining means" claim limitation. Specifically, the word "and" was omitted between the phrase "requisition record" and "to approval rules." The intended phrasing is obvious from the face of the patent, as the Abstract reads: "An approval path determining module, responsive to the requisition record **and** to approval rules in an approval rules database, determines an approval path for the requisition record . . . ." (emphasis added).

The scrivener's error was unintentionally introduced several years into the prosecution of the claims after the original filing of the application on October 28, 1999. The originally-filed "approval path determining means" claim limitation from Claim 1 in the October 28, 1999 application read (in relevant part) "approval path determining means, responsive to the requisition record **and** to approval rules in an approval rules database . . . ." *See* Declaration of Amy K. Van Zant ("Van Zant Decl."), Ex. 2 ("'165 Patent File History") at ARICOU00000162 ('165 Patent Application dated Oct. 28, 1999) (originally-filed claims) (emphasis added). The "and" was omitted beginning with applicants' October 21, 2002 response to examiner's

remarks.  *Compare* '165 Patent File History at ARICOU00000162 (originally-filed Claim 1) *with id.* at ARICOU00000235 (October 21, 2002 Response).

Notably, when the "and" is first omitted in the October 21, 2002 response, the applicants made no mention of an intent to omit the "and," nor did the applicants highlight this change to the claim language, as is required when intending to submit modified draft claims.  *See* Van Zant Decl., Ex. 1, MANUAL OF PATENT EXAMINING PROCEDURE § 714.(c)(1)(ii) (8th ed. 2001) ("If a claim is amended by rewriting such claim with the same number, the amendment must be . . . marked up to show all the changes relative to the previous version of that claim.").  Thus, all of the evidence shows that the omission of the "and" after October 21, 2002 was an unintentional typo.

"When a harmless error in a patent is not subject to reasonable debate, it can be corrected by the court, as for other legal documents."  *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005).  That test is easily met here.

### 2.      Approval Path Determining Means:  Function

| approval path determining means, responsive to the requisition record [and] to approval rules in an approval rules database, for determining an approval path for the requisition record, among various ones of a plurality of possible approvers, required to approve the requisition record based on the commentary entry | |
| --- | --- |
| Ariba's construction | Coupa's construction |
| Determining an approval path for the requisition record. | The phrase "responsive to the requisition record to approval rules in an approval rules database" is unintelligible, and therefore invalid as indefinite.<br><br>To the extent that phrase is not indefinite, the function is: "in response to the requisition record to approval rules in an approval rules database, determining which approvers need to approve the requisition record, and in what order, wherein the approvers and order is determined based on the commentary entry." |

The function of the approval path determining means is simply to determine an approval path for the requisition record.  Coupa agrees with Ariba's proposed function, but would improperly further add the requirements that (1) the path be determined "in response to the requisition record to approval rules in an approval rules database"; and (2) that the identity and order of approvers is determined by the commentary entry field of the requisition record.

9

*The "responsive to" clause.* Including the language following "responsive to" would improperly import a general description of the corresponding structure into the definition of the function of the approval path determining means. The language following "responsive to" describes what the <u>structure</u> of the approval path determining means responds to but does not define its purpose or <u>function</u>. *See Sun Microsystems, Inc. v. Network Appliance, Inc.*, 710 F. Supp. 2d 925, 946 (N.D. Cal. 2008) ("The 'responsive to' phrase here does not identify any function performed by the structure, but rather identifies a separate limitation."). In contrast, "[t]he function is introduced by the claim term 'for' . . . ." *Id.*; *see also Asyst Techs. Inc. v. Empak, Inc.*, 268 F.3d 1364, 1368, 1372 (Fed. Cir. 2001) (omitting a "responsive to" clause preceding the word "for" from the function). Thus, the corresponding structure for performing the function of determining the approval path consists of algorithms that (1) check the content of the requisition; and (2) inspect an approval rules database to decide, based on a series of if-then statements, which approval path to select for that requisition. (For a more complete discussion of the structure, see Part II.C.3, *infra*). As a result, the "responsive to" language sets off structural language, not functional language.

*The role of the "commentary entry."* According to Coupa, both the identities of the approvers and the order in which they approve are based on the content of the commentary entry field. PLR 4-3 at 4. Coupa, however, is taking a clause from the limitation that simply describes what the approvers do after the path has been determined and applying it to restrict the function of the approval path determining means that is the subject of construction here.

Within this limitation, the dependent clause "required to approve the requisition record" modifies "approvers," as even Coupa's construction recognizes. In other words, the approvers are "required to approve the requisition record," not the approval path. The rest of the clause— "based on the commentary entry"—also describes what the "approvers" do, *i.e.*, approve the requisition. The commentary entry is therefore unrelated to the determination of the approval path, which is the function of the "approval path determining means."

Ariba's natural reading is supported throughout by the specification and the prosecution history. The approval path is comprised of the approvers who are necessary to approve a

particular requisition or line item.  *See generally* '165 Patent at 11:26-62.  The approvers in the

system must decide to approve, deny or modify the requisition record and can do so in light of

the commentary entry (if any).  *See id.* at 10:5-9 ("[t]he ability to comment and explain can go a

long way towards making requisition understandable to approvers, allowing them to provide

feedback to requesters, and help them make a decision about whether to approve the request.");

*see also id.* at Fig. 3c; '165 Patent File History at ARICOU00000233 (10/15/2002)

("Specifically, claim 1, as amended, includes a limitation of a commentary entry that allows the

appropriate individuals in the procurement chain to better understand a requisition record and

ultimately approve the requisition record."); *id.* at ARICOU00000244-47 (examiner's

discussion of commentary entry limitation).

### 3.  Approval Path Determining Means:  Corresponding Structure

| approval path determining means, responsive to the requisition record [and] to approval rules in an approval rules database, for determining an approval path for the requisition record, among various ones of a plurality of possible approvers, required to approve the requisition record based on the commentary entry | |
| --- | --- |
| Ariba's construction | Coupa's construction |
| "When a request is submitted, approval software (approval engine 110 in FIG. 1; <u>step 322 in FIG. 3</u>; approval flow software 602 of the System Environment 404, in FIG. 6) inspects the approval rules of the company, [and] decides who needs to approve the request . . . ." '165 Patent at 4:18-22 (emphasis added).  An example of this structure is shown in Fig. 3c in the following portion:  *See also id.* at 10:61-63. | There is insufficient structure under *Blackboard Inc. v. Desire2Learn Inc.*, 574 F.3d 1371 (Fed. Cir. 2009), to support the recited function. |

The specification describes an algorithm for determining the approval path for each

requisition record:  the system (1) checks a set of system-specific if-then statements—"approval

rules"; and then (2) applies these conditional statements to determine who needs to approve a

requisition, and in what order.  *See* '165 Patent at 10:61-63; 4:18-22.  As the specification

teaches, "Approval rules are the conditions that a company uses to decide which approvers are

required for a particular requisition" and "may be expressed as a set of conditional expressions, such as 'if the amount of this purchase is over $25,000 and is for software, then the Information Systems department must approve the purchase." *Id.* at 5:66-6:3; *see also id.* at 16:35-17:9 (describing one embodiment in which each approval rule has a defined predicate, and a defined consequence to apply if the predicate is met by the requisition record).

As Dr. Shamos more fully explains in his expert declaration, one skilled in the art would recognize how, by checking these approval rules, and then applying them to the requisition, the system determines an approval path. Shamos Decl., ¶¶ 58-70. Further, Figure 3c illustrates this conditional application, showing that, for one example, whether the requisition contains unapproved or pre-approved items affects a change in the necessary approval path.

The algorithm shown in Figure 3c at 322 and described in the specification at 4:18-22 and 10:61-63 is unquestionably linked to determining an approval path insofar as it describes an algorithm that "decides who needs to approve the request."

### D. Approval Path Handling Means (35 U.S.C. § 112, ¶6 Agreed Term)

#### 1. Approval Path Handling Means: Function

**approval path handling means for guiding the requisition record along the determined approval path, wherein the approval path handling means generates a global approval indication based on the commentary entry and in response to the requisition record successfully traversing the approval path**

| Ariba's construction | Coupa's construction |
| --- | --- |
| Guiding the requisition record along the determined approval path. | Guiding the requisition record along the determined approval path, and generating a global approval indication based on the commentary entry and in response to the requisition record successfully traversing the approval path. |

Both parties agree that Ariba's proposed function is proper: guiding the requisition along the approval path determined in the previous limitation. But once again, Coupa goes beyond Ariba's proposed function to improperly import additional language into the function: (1) that the means must generate a global approval indication; and (2) that the global approval indication must be based on the commentary entry.

The function of the approval path handling means is straightforward and set off by the language following the word "for" in the claim, *i.e.*, "for guiding the requisition along the determined approval path." *Cf. Sun Microsystems*, 710 F. Supp. 2d at 946 ("The function is introduced by the claim term 'for' . . . ."). The remainder of the claim language describes (1) the state that the requisition record obtains if it successfully traverses the approval path (a "global approval indication"); and (2) information that can be considered by the approvers as the requisition traverses the path (the commentary entry). Neither the global approval indication nor the commentary entry affects the function of the approval path handling means itself, *i.e.*, neither determines the manner in which the requisition is guided along the approval path.

First, the generation of the global approval indication occurs within a "wherein" clause. Under Federal Circuit precedent, a wherein clause is not part of the claimed function if the clause merely describes the result of the delineated limitation. *See Intergraph Hardware Techs. Co. v. Toshiba Corp.*, 508 F. Supp. 2d 752, 768-69 (N.D. Cal. 2007) (citing *Griffin v. Bertina*, 285 F.3d 1029 (Fed. Cir. 2002)). As described below, the approval path handling means guides the requisition record through the approval path. *Infra*, Part II.D.2; Shamos Decl., ¶¶ 81-95. The requisition continues to the next approver if the current approver approves the requisition. *See, e.g.*, '165 Patent at Fig. 3c. As Dr. Shamos explains in his declaration, a person of ordinary skill would understand that the global approval indication is the "system state in which all required approvers from the approval path have approved the requisition." Shamos Decl., ¶¶ 73-74, 77-78. Because this is the necessary result of successfully traversing the approval path via the approval path handling means, the language adds no substantive requirements, and cannot define the function of the means.

Second, Coupa incorrectly attempts to import into the function the limitation that the global approval indication must be based on the commentary entry. This reading ignores the Federal Circuit's warning that claims must be read in light of the specification and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315, 1317 (Fed. Cir. 2005). Worse, the specification and the prosecution both describe a system which enables approvers to consider commentary entry in their decision whether to approve a requisition. *See* '165 Patent

10:5-9 (commentary entries can help approvers make decisions); '165 Patent File History at

ARICOU00000233 (10/15/2002) (same).  Coupa's position, however, that there must be a

global approval indication that is separately based on the commentary entry finds no support in

the intrinsic record.  Critically, Coupa cites no evidence in support of its proposed construction

of the function (and the structure) for the approval path handling means.  PLR 4-3 at 6.

### 2.    Approval Path Handling Means:  Corresponding Structure

| approval path handling means for guiding the requisition record along the determined approval path, wherein the approval path handling means generates a global approval indication based on the commentary entry and in response to the requisition record successfully traversing the approval path | |
| --- | --- |
| Ariba's construction | Coupa's construction |
| Software that, for each approver, marks the requisition record as approved or rejected or modified, and, if necessary, passes the requisition record to the next required approver.  This structure is shown in Fig. 3c of the '165 Patent:  | There is insufficient structure under *Blackboard Inc. v. Desire2Learn Inc.*, 574 F.3d 1371 (Fed. Cir. 2009), to support the recited function. |

The specification discloses an algorithm for moving the requisition along the determined

approval path in response to actions taken by each successive approver.  As shown in Figure 3c,

above and described in the specification, each approver in the approval path can approve, deny,

or modify the requisition record.  *See* '165 Patent at 4:18-29; *id.* at 10:59-60; *see also id.* at

10:65-67; '165 Patent File History at ARICOU00000211 ('165 Patent File History, Office

Action (7/15/2002)).

The algorithm begins with the first approver in an approval path.  If the approver denies

the requisition record, Figure 3c shows that the requisition is removed from the approval path

engine 320.  *See also* '165 Patent at 11:35-38.  An approver may also modify the requisition

record.  *See id.* at Fig. 3c; *id.* at 11:48-62 (describing modifications at requisition and line item

levels).  If the approver approves the requisition, the approval path handling means marks the

requisition as approved and moves the requisition to the next required approver, or if this was

the final approval, passes the requisition onward.  *See* '165 Patent at 11:28-32; *see also* '165

Patent File History at ARICOU00000211 ('165 Patent File History, Office Action (7/15/2002)).

Dr. Shamos includes illustrative flowcharts and discusses examples of hypothetical approval

paths in his declaration.  Shamos Decl., ¶¶ 81-90.

### E. Electronic Receipt Generating Means (35 U.S.C. § 112, ¶6 Agreed Term)

#### 1. Electronic Receipt Generating Means:  Function

| electronic receipt generating means for generating an electronic receipt to acknowledge receipt of the operating resource wherein the electronic receipt indicates one of an acceptance or rejection of a received operating resource and facilitates payment for the accepted operating resource upon acceptance | |
|---|---|
| Ariba's construction | Coupa's construction |
| Generating an electronic receipt to acknowledge the acceptance or rejection of one or more operating resources. | Generating an electronic receipt to acknowledge receipt of the operating resource wherein the electronic receipt indicates one of an acceptance or rejection of a received operating resource and facilitates payment for the accepted operating resource upon acceptance. |

The parties agree that the function of the electronic receipt generating means is

generating an electronic receipt to acknowledge the acceptance or rejection of one or more

operating resources, but diverge over whether the function further includes facilitating payment

for the accepted operating resource upon acceptance.

The specification describes the function of the electronic receipt generating means

simply as showing whether an operating resource has been received and either accepted or

rejected.  For example, the specification teaches that "[t]he system includes a user interface for

acknowledging receipt, which allows employees to acknowledge that various items have been

received."  '165 Patent at 4:66-5:1; *id.* at Fig. 3b ("Desktop Receipt via E-mail Prompt"); *see*

*also id.* at 21:52-63.

The purpose of the electronic receipt was discussed during the prosecution of the

application for the '165 Patent and the applicants stated that they intended the term to be given

its broadest possible meaning.  *See, e.g.*, '165 Patent File History at ARICOU00000309 (Oct. 2,

1003 Remarks) ("Applicants concur with the broadest reasonable interpretation of the claimed

term 'electronic receipt,' as described in the Office Action mailed July 2, 2003, 'to include any electronic form used to acknowledge that goods and services have been received.' (Office Action dated 7/2/2003, p. 5, paragraph 1)."); *see also* '165 Patent at 4:63-65 ("But once the item is shipped, and arrives on the requisitioner's doorstep, receipt of the item must be acknowledged before payment is made."). Together, the specification and file history show that the function of the electronic receipt generating means is simply to indicate whether goods have been received and accepted or rejected.

Coupa contends that the "facilitates payment for the accepted operating resource upon acceptance" portion of the "wherein" clause within the electronic receipt generating means claim limitation ought also to be included in the electronic receipt generating means function. PLR 4-3 at 7-8. However, the "facilitates payment" portion of the wherein clause describes how the receipt can be used <u>after it has already been generated</u>. That is, if a receipt is generated and used to acknowledge the receipt of goods, the fact that the receipt has been saved to the system (as apart from the fact that a receipt has been generated) can be used to facilitate payment for the received goods. *See* '165 Patent at 4:62-65 ("But once the item is shipped, and arrives on the requisitioner's doorstep, receipt of the item must be acknowledged before payment is made."); *id.* at 21:40-41 ("[R]eceipts are the final acknowledgment to trigger payment.").

### 2. Electronic Receipt Generating Means: Corresponding Structure

| | |
|---|---|
| **electronic receipt generating means for generating an electronic receipt to acknowledge receipt of the operating resource wherein the electronic receipt indicates one of an acceptance or rejection of a received operating resource and facilitates payment for the accepted operating resource upon acceptance** | |
| Ariba's construction | Coupa's construction |
| One embodiment of this structure is shown at 4:66-5:1 of the '165 Patent: "The system includes a user interface for acknowledging receipt, which allows employees to acknowledge that various items have been received." *See generally id.* at Fig. 3b ("Desktop Receipt via E-mail Prompt"). <br><br> Another embodiment is shown at 21:52-54 of the '165 Patent: "The system provides a simple form (the fields of which are shown below in Table 15) for the employee to indicate that he or she has physically received an item." *See generally id.* at 22:16-17 (system records rejections); 21:61-62 (employee can reject an entire requisition or individual line items). | Providing an employee with a form having the fields shown in Table 15, where the form allows an employee to take the steps 1(a)-(b) disclosed on col. 21, lln. 56-67. |

The dispute regarding the corresponding structure is whether it ought to encompass all disclosed embodiments (Ariba's proposal) or be limited to a one of the disclosed embodiments (Coupa's proposal).

The specification discloses that the electronic receipt generating means produces a "simple form," through which the user can indicate whether received goods are accepted or rejected. *See* '165 Patent at 4:66-5:1; *id.* at Fig. 3b ("Desktop Receipt via E-mail Prompt"); *id.* at 21:52-54. This is consistent with the teaching that the system "should be appropriate for both novice users—people who may use the system only once or twice a year—and expert users, who may use the system almost daily." *Id.* at 7:23-25 (discussing user interface for requisitions).

Coupa's proposed corresponding structure excludes the disclosure in the specification at 4:66-5:1 and would limit the electronic receipt generating means to a single embodiment as disclosed at 21:51-22:17, including the fields shown in Table 15. *See* PLR 4-3 at 8. Coupa's proposed construction is flawed, because (1) it excludes the corresponding structure disclosed at

4:66-5:1 and Fig. 3b; and (2) it imports the exemplary fields from Table 15 as part of the structure.

Table 15, entitled "Fields for receipt acknowledgement," includes the fields "date received," "need-by-date," "item description," and "comment." The patent teaches that the fields in the tables are intended as exemplary since, "each instantiation of the system can have a slightly different user interface, customized to present the information appropriate for that particular company." *Id.* at 7:2-5; *see also id.* at 5:47-51 ("To support the goal of flexibility, one embodiment of the system is designed to allow companies to customize the set of data fields, recognizing that every company has a slightly different set of information that must be kept.") (emphasis added).

Indeed, even under Coupa's identified function for electronic receipt generating means, there is no requirement that the means function to show a date received, need-by-date, item description, or comment. Instead, under Coupa's proposed construction of the function, all that is required is that a receipt is generated that is capable of showing acceptance or rejection of goods or services and that facilitates payment. The specific configuration shown in Table 15 is therefore not necessary for the performance of the function, *i.e.*, allowing a user to acknowledge the acceptance or rejection of one or more operating resources via a user interface. *See, e.g.*, '165 Patent File History at ARICOU00000309 (Oct. 2, 2003 Remarks). "Under 35 U.S.C. § 112, ¶ 6, a court may not import into the claim structural limitations from the written description that are unnecessary to perform the claimed function." *Acromed Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1382 (Fed. Cir. 2001).

**F.      Requisition Record Generating Means[3] (35 U.S.C. § 112, ¶6 Agreed Term)**

| requisition record generating means for generating a requisition record for a requisition | |
|---|---|
| Ariba's construction | Coupa's construction |
| Box 302 of Fig. 3a shows three different structures for generating a requisition record, "Req. Wizard," "Normal Entry" and "Clone Existing Req.":  '165 Patent at Fig. 3a; *see also* '165 Patent at 7:27-34 ("The system allows users to create new requisitions in <u>at least</u> the following ways: a. With the requisition Wizard, which guides the employee through a series of questions at each step, providing navigational aids to keep track of the big picture, and presenting lists of choices whenever possible instead of asking the employee to type things in.  b. By cloning existing requisitions.") (emphasis added).  *See generally id.* at 3:30-4:11 (describing an example of the wizard embodiment). | The steps disclosed in col. 7, line 35 to col. 10, line 54 (i.e., steps 2(a)-(g), 3(a)-(c), 4(a)-(d), 5(a)-(c), and 6(a)-(f)), and the steps disclosed in Figs. 3a and 3c within box 302, wherein the requisition record is generated with the fields disclosed in Tables 1 and 2. |

The parties' dispute is whether the corresponding structure for requisition record generating means is that described in the specification under the heading "Starting New Requisitions" (and corresponding figures) (Ariba) or that described under the heading "Filling in Requisitions" (Coupa).  In other words, is the structure for "generating" a requisition that disclosed for starting a requisition for or for fully completing that (already generated) requisition?

Ariba's proposed corresponding structure identifies three different means[4] for generating a requisition form that are shown in Figure 3a and listed under the heading "Starting New

---

[3] The parties agree that the function is "generating a requisition record for a requisition."  PLR 4-3 at 9.

[4] *Micro Chem., Inc. v. Great Plains Chem Co., Inc.* 194 F.3d 1250, 1258-59 (Fed. Cir. 1999) ("When multiple embodiments in the specification correspond to the claimed function, proper application of §112, ¶ 6 generally reads the claim element to embrace each of those embodiments.").

Requisitions" in the specification. PLR 4-3 at 9; '165 Patent at 7:22-34. The specification states that, "The system allows users to create new requisitions in at least the following ways," and then goes on to describe generating a requisition record by use of a wizard or by cloning. '165 Patent at 7:27-34. Figure 3a shows wizard and cloning structures plus a "normal entry" method of generating a requisition. Each of these three structures (wizard, cloning and normal entry) are corresponding structures for generating a requisition record.

Curiously, Coupa's proposed corresponding structure ignores the portion of the specification that describes how "to create new requisitions" altogether. Instead, Coupa identifies the portion of the specification at 7:35-10:54, *i.e.*, the portions entitled "Filling in Requisitions," "Adding Line Items," and "Filling in Line Items." Coupa's proposed structure describes how to completely fill out a requisition form but not how to generate that form in the first instance, as the agreed-upon function of this term requires.

Coupa also improperly identifies "the steps disclosed at Figs. 3a and 3c within Box 302 wherein the requisition record is generated with the fields disclosed in Tables 1 and 2" as corresponding structure. PLR 4-3 at 10. This structure is, like that identified at 7:35-10:54, far broader than the claimed function. For example, the steps shown in Figures 3a and 3c include logging in, adding line items, attaching documents, previewing an approval path, and submitting the requisition. None of those steps generates a requisition record—only the wizard, normal entry, or cloning structures shown in Figure 3a and described at 7:27-35 start a requisition form into which further information may subsequently be entered. The portions of the specification that Coupa exclusively cites and relies on describe <u>completing</u> a requisition after it has already been generated.

In addition, as with electronic receipt generating means, Coupa attempts to limit the corresponding structure to the generation of a requisition record with the specific data fields described in Tables 1 and 2 of the specification. But, as with Table 15 of the electronic receipt generating means, this attempt ignores the teaching regarding the "extensibility and flexibility" of the claimed system and the data fields used by individual companies in configuring the system's components. *See* '165 Patent at 2:49-51; *see also id.* at 7:2-5; *id.* at 5:47-51.

20

Moreover, the data fields in Tables 1 and 2 show data for a completed requisition and do not show the structure for how to generate a requisition form.

### G. Purchase Order Module

| Ariba's construction | Coupa's construction |
|---|---|
| Software for generating a purchase order. | An ordering module that acts on a fully approved requisition and transmits the requisition to an ERP adapter, rather than to a supplier, for generating a purchase order. |

The parties agree that the term PO module is not subject to 35 U.S.C. §112, ¶6. PLR 4-3 at 10. Nonetheless, Coupa's proposed construction would improperly limit PO module to a single, disclosed embodiment (the ERP embodiment) while excluding another disclosed embodiment (the standalone embodiment).

Consistent with the "order generating means" claim limitation and the overall teaching in the specification, once a requisition has been approved, an order needs to be prepared for fulfillment by the supplier. *See, e.g.*, '165 Patent at Claim 1 ("order generating means for deciding between at least one of a purchase card module, a direct order module, and a purchase order module to submit the requisition for fulfillment by the supplier"); *id.* at 19:26-27 ("An ordering module is the piece of the system that takes a fully approved requisition and submits it for fulfillment.").

A PO module is the portion of the system that is used to build a purchase order. The system shows at least two examples of PO modules—ERP integrated and standalone.[5]

- *In the ERP-integrated PO module embodiment*, the specification describes that: "The system transmits the requisition to the ERP adapter, as an ERP requisition. Once the requisition is in the ERP, the Purchasing Agent can manipulate it with standard ERP

---

[5] It should be noted that, as the term PO module is not subject to 35 U.S.C. §112, ¶ 6, its structure is not limited to these two disclosed embodiments. Rather, a PO module is any software that generates a purchase order and must encompass at least the two embodiments in the specification.

operations to complete the process.  For example, the agent typically autocreates a purchase order from the requisition, prints it out, an[d] sends it to the supplier for fulfillment."  '165 Patent at 21:27-34.

- *In the standalone PO module embodiment* shown in the specification, there is "no ERP adapter present" and the system "[p]rovides the ability to print out purchase orders and transmit them to the supplier."  '165 Patent at 26:33-35.

The operation of these two types of PO modules is further depicted in Figure 3b, with the standalone PO module shown in the left-most column and the ERP-integrated PO module shown in the right-most column.  In each instance, the output of the PO module is a purchase order.

### 1.    The "ERP only" dispute

Coupa's proposed construction that a PO module is "an ordering module that acts on a fully approved requisition and <u>transmits the requisition to an ERP adapter, rather than to a supplier</u>, for generating a purchase order" (PLR 4-3 at 10) (emphasis added) is wrong because (1) it would read extraneous language from the specification into this non-means-plus-function term; and (2) it would read the standalone PO module embodiment out of the claim entirely.  The Federal Circuit has held that, "The patentee is entitled to the full scope of his claims, and [the court should] not limit him to his preferred embodiment or import a limitation from the specification into the claims."  *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1347-48 (Fed. Cir. 2009).  Likewise, "[A] claim interpretation that excludes a preferred embodiment is rarely, if ever, correct."  *Oatey*, 514 F.3d at 1276-77 (internal quotations omitted).

### 2.    The "fully approved requisition" dispute

Coupa's attempt to construe into the term a requirement that the module only "acts on fully approved requisition[s]" is likewise wrong.  As with the ERP adapter, Claim 1 nowhere mentions acting on a "fully approved requisition."  While the specification does describe that, in a preferred embodiment, an "ordering module is the piece of the system that takes a fully approved requisition and submits it for fulfillment," '165 Patent at 19:26-27, it would be an

error to import this limitation from the specification into this claim term. *Kara Tech*, 582 F.3d at 1347-48; *DSW, Inc. v. Shoe Pavilion*, Inc., 537 F.3d 1342, 1347 (Fed. Cir. 2008).

## H. Direct Order Module

| Ariba's construction | Coupa's construction |
|---|---|
| Software for generating an order against a direct order agreement. | An ordering module that acts on a fully approved requisition and transmits the requisition directly to a supplier without storing the requisition in an ERP system or generating a purchase order. |

As with the PO module, the DO module is simply a portion of the software for generating a particular type of order, in this case, an order that is backed by a direct order agreement. The parties agree that this term is not subject to 35 U.S.C. §112, ¶6. Coupa, however, offers a construction that would improperly limit this term to a description of one embodiment in the specification, *i.e.*, the direct submission of an order to a supplier without going through the ERP system.

The specification defines the term "direct order agreement" and shows that the DO module is simply the portion of the system that builds an order against such a direct order agreement. *See* '165 Patent at Fig. 3b (center column); *id.* at 21:5-24. As the specification explains, "There are typically no constraints on orders against direct billing agreements. The direct order agreement includes terms and conditions, and specifies the frequency of billing." '165 Patent at 20:67-21:3. In sum, a "direct order" is any type of order that is booked against a master direct order agreement and the a DO module is software for generating an order against such an agreement.

Coupa's proposed construction is "an ordering module that acts on a fully approved requisition and transmits the requisition directly to a supplier without storing the requisition in an ERP system or generating a purchase order." PLR 4-3 at 11. This construction is too narrow for three reasons:

First, as with the PO module above, Coupa improperly attempts to import a limitation from the specification that the DO module must act only on "fully approved" requisitions. This

requirement, however, is nowhere in the claim language itself and it would be improper to import this limitation into this term.  *See Kara Tech*, 582 F.3d at 1347-48.

Second, Coupa would require that direct orders be sent "directly to a supplier without storing the requisition in an ERP system."  Coupa appears to rely on the specification at 20:64-67 for this language.  PLR 4-3 at 11 (Coupa's intrinsic support cites 20:63-21:19).  However, this would improperly limit this non-means-plus-function term to a preferred embodiment.  *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").  Moreover, the fact that the specification states that "[t]he direct order module is an ordering module that supports communication of orders directly between the buyer and supplier without storing the requisition in an ERP system," '165 Patent at 20:64-67, does not mean that it precludes the sending of an order indirectly through the ERP system or some other indirect means.

Third, Coupa's construction would define the DO module in the negative as "not generating a purchase order."  However, a direct order is an order for the purchase of goods, just as a purchase order is an order for the purchase of goods.  The labeling of these orders is not what sets them apart from one another.  Rather, what distinguishes a direct order from a purchase order is whether the order is backed by a direct order agreement.

## I.     Electronic Requisition Form

| Ariba's construction | Coupa's construction |
|---|---|
| An electronic form for requesting goods or services. | A structured document with predefined areas for entering or changing information, wherein the document both constitutes a request for approval to purchase items from one or more suppliers, and lacks a purchase order number and terms and conditions of an offer. |

An electronic requisition form is simply any electronic form that is used for requesting goods or services.  The specification uses the term "requisition" in its ordinary sense, *i.e.*, to refer to any form for requesting goods or services.  The claims and the specification use the term "requisition" to encompass both (1) a request to order goods or services; as well as (2) an actual

order for such goods and services. For example, the specification repeatedly uses the term "requisition" interchangeably with "order." *See, e.g.*, '165 Patent at 4:49-56.

The examples of requisition records shown in the specification include terms and conditions that would be included in an order. For example, Table 1 ("Fields of Requisition") shows example data fields for a requisition record as including a unique number associated with the form, ship-to information, reporting currency for the goods, individual line items, deliver-to information and total cost. Likewise, Table 2 ("Fields of a line item") shows additional information that would be reflected by the requisition record, including quantity, ship-to, deliver-to, carrier, carrier method, accounting information, and pricing information.

Coupa's proposed construction would require that the requisition record "both constitutes a request for approval to purchase items from one or more suppliers, <u>and lacks a purchase order number and terms and conditions of an offer</u>." PLR 4-3 at 11 (emphasis added). However, as shown *supra* in the examples from the preferred embodiments disclosed in the specification, the electronic requisition form can, and often does, include terms and conditions from an offer. *See, e.g.*, '165 Patent at Fig. 3a (line items, quantity, date needed by) and Table 1 (Ship-to, Reporting currency, Line items, Deliver-to, Total Cost).

Moreover, Coupa's proposed construction would further include the limitation that the electronic requisition form comprise "a structured document with predefined areas for entering or changing information." However, Coupa cites to nothing in the specification that <u>requires</u> that the requisition record is "structured" or that it contain "predefined areas."

## III. CONCLUSION

For the foregoing reasons, Ariba respectfully requests that the Court adopt its proposed claim constructions.

DATED: July 12, 2013        COVINGTON & BURLING

By: /s/ *Amy K. Van Zant*
Attorneys for Plaintiff