Robert T. Haslam (SBN 71134 / rhaslam@cov.com)
Amy K. Van Zant (SBN 197482 / avanzant@cov.com)
Hyun S. Byun (SBN 281753 / hbyun@cov.com)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Robert D. Fram (SBN 126750 / rfram@cov.com)
Christine Saunders Haskett (SBN 188053 / chaskett@cov.com)
Matthew D. Kellogg (SBN 280541 / mkellogg@cov.com
Tess A. Hamilton (SBN 279738 / tahamilton@cov.com)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Attorneys for Plaintiff/Counter-defendant
ARIBA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ARIBA, INC., <br><br> Plaintiff/Counter-defendant, <br><br> v. <br><br> COUPA SOFTWARE INC., <br><br> Defendant/Counterclaimant. | Case No. 3:12-cv-01484 WHO <br><br> **ARIBA, INC.'S REPLY CLAIM CONSTRUCTION BRIEF** <br><br> Date: September 13, 2013 <br> Time: 9:00AM <br> Place: Courtroom 12 <br> Judge: Hon. William H. Orrick <br><br> Complaint Filed: March 23, 2012 <br> Trial Date: Not Set <br><br> JURY TRIAL DEMANDED |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................ 1

II.   ORDERING/REQUISITION TERMS ................................................................................ 1

     A.   Direct Order Module ................................................................................................ 2

     B.   Electronic Requisition Form (Claims 35 and 41) .................................................... 4

     C.   Purchase Order Module (Claims 1, 35 and 41) ....................................................... 4

III.  TERMS THAT ONE OR BOTH PARTIES CONTEND ARE SUBJECT TO
      112(f) ................................................................................................................................. 7

     A.   Order Generating Means .......................................................................................... 7

          1.   Function ........................................................................................................ 7

          2.   Corresponding Structure .............................................................................. 9

     B.   Deciding Between at Least One of a Purchase Card Module, a Direct
           Order Module, and a Purchase Order Module ...................................................... 11

     C.   Approval Path Determining Means ....................................................................... 11

          1.   Function ...................................................................................................... 11

          2.   The Corresponding Structure ..................................................................... 13

     D.   Approval Path Handling Means ............................................................................. 14

          1.   The Function .............................................................................................. 14

          2.   Corresponding Structure ............................................................................ 15

IV.   CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236 (Fed. Cir. 2007) .............. 11

*Alza Corp. v. Impax Laboratories, Inc.*, 2005 WL 6220093 (N.D. Cal. Mar. 10, 2005) ............ 11

*Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F. 3d 1371 (Fed. Cir. 2009) .................................. 15

*CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353 (Fed. Cir. 2011) ......................... 12

*Creo Products, Inc. v. Presstek, Inc.*, 305 F. 3d 1337 (Fed. Cir. 2002) ...................................... 10

*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022 (Fed. Cir. 2002) ................... 11

*ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509 (Fed. Cir. 2012) .......................................... 13

*Function Media, LLC v. Google, Inc.* 708 F.3d 1310 (Fed. Cir. 2013) ....................................... 10

*Microprocessor Enhancement Corp. v. TI*, 520 F.3d 1367 (Fed. Cir. 2008) .............................. 12

*O.I. Corp. v. Tekmar Co., Inc.*, 115 F.3d 1576 (Fed. Cir. 1997) ................................................. 11

*Oatey Co. v. IPS Corp.*, 514 F.3d 1271 (Fed. Cir. 2008) ........................................................ 5, 8

*Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331 (Fed. Cir. 2011) ......................... 10, 13

*Respironics, Inc. v. Invacare Corp.*, 303 Fed. Appx. 865 (Fed. Cir. 2008) ................................ 11

*SuperGuide Corp. v. DirectTV Enters., Inc.,* 358 F.3d 870 (Fed. Cir. 2006) ................................ 7

*Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376 (Fed. Cir. 2011) ............................ 10, 13

*SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365 (Fed. Cir. 2013) ........................................... 5

*Yodlee, Inc. v. CashEdge, Inc.*, 2006 WL 3456610 (N.D. Cal. Nov. 29, 2006) .......................... 13

## I. INTRODUCTION

As Coupa rightly notes, there are two fundamental disputes that permeate the parties' constructions: (1) whether there is overlap or a complete dichotomy between the terms "requisition" and "order" as used in the specification and (2) whether there is sufficient corresponding structure in the specification to perform the identified functions for the means-plus-function terms. As to the first issue, these terms are not complicated. A requisition is simply a "request for goods," which can either be internal to an enterprise or external to suppliers. Conversely, an order is always external to an organization. This is how both the claims and the specification consistently use these terms. Ariba's proposed constructions track this logic; Coupa's do not. As to the second issue, the specification discloses algorithms corresponding to the functions for each of the means-plus-function limitations. The disputes center around matching those algorithms to the proposed functions. Coupa has, in each instance, proposed functions that import limitations nowhere required by the claim language, only to then argue that there is insufficient corresponding structure in the specification that correspond to its dense functions.

## II. ORDERING/REQUISITION TERMS

Coupa's constructions of "direct order module," "purchase order module," and "electronic requisition form" are predicated on its fundamental contention that the specification consistently defines the output of the direct order module as a "requisition" whereas the output of the purchase order module is consistently defined as an "order." This contention is easily dismantled by reading the "ordering modules" section of the specification, which uses the terms "requisition" and "order" interchangeably with respect to the output of the direct order module in particular and to the ordering modules in general. Non-infringement driven semantics, not the specification, motivates Coupa's constructions—as Coupa notes, its accused system never transmits anything labeled a "requisition," to suppliers, it only sends something called a "purchase order." Resp. Br. at 12. Thus, labeling the output of the direct order and purchase order modules can only lead to mischief—accordingly, the modules are defined by what they do in Ariba's amended proposed constructions.

A. **Direct Order Module**[1]

| Ariba's construction | Coupa's construction |
|---|---|
| ~~Software for generating an order~~ <u>Software for ordering operating resources</u> based a direct order agreement. | An ordering module that ~~acts on~~ <u>transmits</u> a fully approved requisition ~~and transmits the requisition~~ directly to a supplier <u>based on a direct order agreement</u>, without storing the requisition in an ERP system or generating a purchase order |

The parties dispute whether the DO module can (1) only output a requisition (as opposed to an order); (2) store its output in an ERP; and (3) act only on a "fully approved" requisition.

*Requisition v. order*: Coupa contends that a direct order module "skips the process of generating a purchase order and instead transmits the requisition form directly to one or more suppliers, bypassing the ERP system altogether." Resp. Br. at 7. This construction ignores the specification, which describes a direct order module as communicating orders, not requisitions:

> The direct order module is an ordering module that supports communication **of orders** directly between the buyer and supplier, without storing the requisition in an ERP system.

20:64-66 (emphasis added). Likewise, Figure 3b (center column) shows the DO module with a "DO [Direct Order] created automatically," "DO sent to Supplier," and "Supplier Receives DO." In contrast, Figure 3b (right column) shows a "Requisition Load" being run by the ERP embodiment of the PO module, with the ERP system generating the order ("Build PO") in that instance.

But the specification and claims also refer to the direct order module outputting a "requisition" to suppliers. For example, the specification states that the direct order module, "Transmits the requisition directly to the supplier via fax or e-mail, as specified in the supplier profile." 21:14-15. Likewise, Claim 35 involves "transmitting the electronic requisition form directly to at least one of the plurality of suppliers based on a direct order agreement . . . ."

The specification also uses the terms "requisition" and "order" interchangeably when referring to the ordering modules in general. *Compare* 19:25-26 ("An ordering module is the piece of the system that takes a fully approved requisition and submits it for fulfillment.") *with*

---

[1] Where the parties have amended their constructions since Ariba's opening brief, the new constructions are set forth in this brief.

2

19:33-34 (the system will "Choose the preferred ordering module for each of those suppliers and use it to transmit the order."); *see* 4:45-47 ("After the requisition is fully approved, supplier interface 330 communicates with the suppliers to give them the order."); 4:49-53 ("When a requisition is completed, the system will . . . use that method for transmitting the requisition to the supplier."). Thus, the construction of direct order module must encompass the transmission of orders <u>or</u> requisitions—the label does not matter, nor can it, since the specification and claims disclose the direct order module transmitting both "requisitions" and "orders."

*ERP storage/"directly"*: The specification teaches that the "direct order module is an order module that supports communication of orders directly between the buyer and supplier, without storing the requisition in an ERP system." 20:64-67. The fact that the direct order module "supports" such communication does not mean that it requires it. Indeed, the specification teaches an integrated system in which the procurement software and ERP system communicate back and forth regarding requisitions and orders (irrespective of the ordering module used). *See* 6:48-49 ("[The adapters] are also capable of storing the entire approved requisitions back into the ERP."); 23:55-57 ("The adapters can pull back the purchase order numbers for those requisitions, and store the PO numbers as extrinsic data fields associated with each line item."). Moreover, Claim 35 teaches sending the requisition "directly" to at least one supplier based on a "direct order agreement." This language would be superfluous if use of a direct order module always meant 'direct' transmission. *See also* Claim 41 (requiring direct transmission but not a direct order agreement). Thus Coupa's construction that the direct order module generates an output that is always transmitted "directly" and is never "stored in the ERP system" imports limitations that are contrary to the specification and claims.

*Approval*: Coupa's construction imports the limitation that the requisition be "fully approved." However, neither Claim 35 nor 41 (each of which includes a "direct order module" limitation) has any approval path or approvers mentioned in the claims at all. Rather, these claims involve a user generating a requisition and sending that requisition directly to the supplier with no intervening approval flow.

3

1    **B.    Electronic Requisition Form (Claims 35 and 41)**

| Ariba's construction | Coupa's amended construction |
|---|---|
| An electronic form for requesting goods or services. | ~~a structured document with predefined areas for entering or changing information, wherein the document both~~ An electronic form that constitutes a request for approval to purchase goods or services ~~items from one or more suppliers, and lacks a purchase order number and terms and conditions of an offer~~ |

The disputes here are whether the electronic requisition form (1) is a "request for approval" and (2) must omit a purchase order and the terms and conditions of an offer.

*Approval*:  Nothing in Claims 35 and 41 (the only claims that use the term "electronic requisition form") mentions any kind of approval—neither an approval path nor approvers. Moreover, both Claims 35 and 41 take the electronic requisition form from "soup to nuts"—the claims entail generating the electronic requisition form and then transmitting that form to a supplier, receiving the goods and facilitating payment for those goods.  That is, an electronic requisition form actually orders goods in Claims 35 and 41; it is not used as a "request for approval" to make that purchase.

*Purchase order number/terms and conditions of an offer*:  Coupa would include the negative construction of what an electronic requisition form is not.  Coupa's primary argument—that a requisition is never an order—has already been discredited.  Its second argument is simply that the "requisition" fields shown in Table 1 in the specification do not include a "purchase order number" field.  Resp. Br. at 13 & n.9.  However, a "requisition" is different from an "electronic requisition record" in Claims 35 and 41.  Moreover, the specification shows a direct order number (distinct from the requisition number) similarly not found in Table 1, yet associated with an order backed by a direct order agreement (as with Claim 35).  *See* Table 5, Fields 12, 13.  Finally, as an order, the electronic requisition form must naturally include (or at least refer to, where backed by a direct order agreement in Claim 35) the terms and conditions of an offer.

**C.    Purchase Order Module (Claims 1, 35 and 41)**

| Ariba's amended construction | Coupa's amended construction |
|---|---|
| Software for ~~generating a purchase~~ ordering operating resources without | An ordering module that ~~acts on~~ transmits a fully approved requisition ~~and transmits the requisition~~ to an |

4

| | |
|---|---|
| a direct order agreement. | ERP system ~~adapter, rather than to a supplier~~, for generating a purchase order. |

The disputes here are (1) whether the output of the purchase order module can only be a requisition, which is, in turn, used to generate a purchase order within an ERP system and (2) whether the requisition must be "fully approved."

*ERP-only v. standalone*: The specification describes at least two separate processes that result in a purchase order being sent to a supplier: the ERP embodiment (21:25-35) and the standalone embodiment (26:30-40). *See also* Fig. 7 (referring to purchase order modules in the plural). Basically, the ERP embodiment shows how a purchase order can be generated when the system is integrated with an ERP system (Fig. 3b, right column) and the standalone embodiment shows how a purchase order is generated when the system is not integrated with an ERP system (Fig. 3b, left column). Both embodiments result in a purchase order being generated. *Compare* Fig. 3b, right side ("ERP Build PO) and Fig. 3b, left side ("PO Built automatically"). Coupa ignores Figure 3b entirely and instead attacks the standalone embodiment as a purchase order module on two grounds, neither of which is sound.

First, Coupa suggests that the standalone purchase order module is an unclaimed embodiment, stating that, "there is no legal requirement that claims cover every embodiment in the specification." Resp. Br. at 10. The Federal Circuit, however, has cautioned that, "At leas[t] where claims can reasonably [be] interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence on the contrary." *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1277 (Fed. Cir. 2008); *see also e.g. SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1378-79 (Fed. Cir. 2013) (a claim construction that excludes a preferred embodiment is rarely, if ever, correct). Here there is no dispute that the claims can "reasonably be interpreted" to include the standalone embodiment—for Coupa can point to no claim language that excludes it.

Second, Coupa contends that the standalone embodiment is only a "cursory reference at the end of the patent, separate and apart from the patent's description of the purchase order module." Resp. Br. at 10. Citing 26:30-35, Coupa asserts that it only provides "basic

5

1 functionality" for "when there is no ERP adapter present" and, as such, is "insufficient to rebut
2 the patent's explicit definition [at 21:26-27 requiring that the ERP system generate the purchase
3 order]." *Id.* at 10-11. In so doing, however, Coupa fails to quote the very next lines of the
4 specification, which expressly discuss how, in standalone mode, the system can generate and
5 modify a purchase order, including standard terms and conditions and a purchase order number.
6 26:36-40. Nor does Coupa offer any explanation as to why "basic" functionality should be
7 excluded from the system, particularly since the claims themselves make no distinction between
8 "basic" features and otherwise.
9       Indeed, the specification expressly states that the system does not require the presence of
10 any adapters:

> The system preferably uses adapters when possible, thus avoiding duplicating any information that is already available. But the system is not dependent on the presence of any of these adapters, and can run stand-alone when a company does not have a particular service or there is no adapter available for it.

14 22:41-46 (emphasis added). Thus, contrary to Coupa's construction, an ERP adapter is not
15 required by the system and as such, the use of an ERP adapter or system is not definitional of a
16 purchase order module.
17       Coupa's suggestion that Ariba's proposed construction would improperly include the
18 software within an ERP system as part of the claimed invention (Resp. Br. at 11) also is wrong.
19 Ariba's construction is simply "software for ordering operating resources without a direct order
20 agreement." This covers both (1) software within the system that sends a requisition to an ERP
21 adapter (ERP embodiment) and (2) software within the system that actually generates a
22 purchase order (standalone embodiment).
23       Finally, Coupa's contention that Ariba's proposed construction of "purchase order
24 module" could potentially sweep in direct orders (while wrong even under Ariba's prior
25 construction) is mooted by Ariba's amended construction, which expressly provides that a
26 purchase order module is software for ordering operating resources without a direct order
27 agreement.
28

6

1  *Approval*: Nor does the claim language require that the purchase order module transmit a "fully approved" requisition. The term "purchase order module" appears in independent claims 35 and 41, neither of which have approval path determining or handling limitations.

## III. TERMS THAT ONE OR BOTH PARTIES CONTEND ARE SUBJECT TO 112(f)[2]

### A. Order Generating Means

#### 1. Function

The parties' fundamental dispute is whether the function of the order generating means should be construed to permit the selection of more than one ordering module per requisition.

*Plain meaning & grammar*: Ariba's plain meaning argument is simple: the phrase "at least one of" means "one or more than one." Br. at 2-3. The Federal Circuit has held that where the phrase "at least one" prefaces a list recited in the conjunctive, "at least one" modifies each item in that list, not the list as a whole. *SuperGuide Corp. v. DirectTV Enters., Inc.,* 358 F.3d 870, 886 (Fed. Cir. 2006). Coupa divorces the phrase "deciding between" from "at least one" to argue: "The plain meaning of the phrase 'deciding between' multiple choices suggests that only one choice is selected, not multiple ones." Resp. Br. at 16. But the term is "deciding between at least one of [each ordering module]," not simply "deciding between [each ordering module]." As set forth in Ariba's opening brief, the set from which a choice is made can encompass more than one module, and the claim language nowhere limits the number of modules that can be chosen from that set.

When Coupa finally acknowledges the "at least one" language, it misleadingly contends that it "merely reflects that there can be more than one supplier for multiple line items in a requisition from which to 'decide between,' not that more than one module can be chosen for the same order." Resp. Br. at 17. But the phrase "deciding between at least one of" modifies the list of ordering module types, not suppliers. Of course, Coupa's concession that there "can

---

[2] The parties have agreed to drop the terms "requisition record generating means" and "electronic receipt generating means" from construction at this time since both parties agree that these terms are not claim or case dispositive. The parties reserve the right to construe these terms at a later date and based on the exchanged constructions.

7

1   be more than one supplier for multiple line items in a requisition" (Resp. Br. at 17) itself
2   demonstrates that there can be more than one order per requisition and therefore more than one
3   type of ordering module used to generate such orders.  *See* 21:7-14 (describing the process for
4   checking item and supplier profiles to determine preferred ordering methods for each line item).
5         Finally, Coupa simply resorts to arguing from irrelevant passages in the specification.
6   For example, Coupa says:  "The specification discloses that the system chooses only one
7   module for any given order."  Resp. Br. at 16.  But the claim language is "order generating
8   means for deciding between at least one of [each module type] to submit the requisition for
9   fulfillment by a supplier."  Claim 1.  It does not matter whether only one module is used for any
10  given <u>order</u>, what matters is whether more than one ordering module is used for any given
11  <u>requisition</u>.  Only once an ordering module or modules have been selected for a given
12  requisition are those modules then used to prepare and transmit an actual order to one or more
13  suppliers (depending on the number of line items on the requisition).  *See, e.g.,* Claims 2 and 4.
14        *Multiple line items*:  Coupa makes no attempt to refute Ariba's argument that the fact
15  that the specification teaches that there can be multiple line items per requisition, each
16  corresponding to different preferred ordering methods, means that there can be multiple
17  ordering modules selected per requisition.  In fact, as just discussed, Coupa concedes that there
18  "can be more than one supplier for multiple line items in a requisition."  Resp. Br. at 17.
19  Coupa's proposed construction would read this embodiment—which Coupa acknowledges
20  exists—out of the claim.  *See, e.g., Oatey*, 514 F.3d at 1276-77 (reading out a preferred
21  embodiment is "rarely, if ever, correct.")
22        *Multiple ordering modules per single item*:  Coupa argues that the specification does not
23  disclose a combination of the p-card ordering module with either a DO or PO ordering module.
24  Resp. Br. at 17.  However, Figs. 3b and 3c together (along with corresponding disclosure at
25  19:25-21:35 and 26:30-40) depict logic for whether to use a p-card ordering module to
26  determine the payment mechanism for an order (Fig. 3c) and the DO module, standalone PO
27  module and ERP-PO module as the logic for transmitting orders (Fig. 3b).  Nowhere in Fig. 3b
28  is there a p-card order module depicted transmitting an order, nor is there anything called a "p-

8

1   card order."  As the specification makes clear, "The Purchasing Card ordering module supports
2   the use of purchasing cards as a payment mechanism."  19:38-39; *see also* Shamos Decl. ¶¶ 18,
3   21(c); Decl. of Duarte, Ex. 2 ("Shamos Tr.") at 64:4-65:2 (explaining that the "P-card or Direct
4   pymt. method?" Box in Figure 3c chooses whether the p-card module can be used, but that later,
5   in Figure 3b, the requisition is ultimately transmitted with either a DO or a PO module).
6         Coupa's remaining objection to Ariba's proposed construction is to the inclusion of the
7   phrase "where the chosen module or modules is/are used <u>as part of the process</u> to submit an
8   order for one or more line items."  Resp. Br. at 18.  Coupa contends that the phrase "as part of
9   the process" is "too vague."  *Id.*  However, as should be clear from the explanation of the p-card
10  module functionality *supra*, in the preferred embodiment, the p-card ordering module "supports
11  the use of purchasing cards as a payment mechanism."  19:38-39.  As such, use of the p-card
12  ordering module in the preferred embodiment is "part of the process to submit an order," but the
13  p-card module does not itself transmit the order.
14        **2.   Corresponding Structure**
15        The crux of Coupa's argument that there is insufficient corresponding structure is that "a
16  person of ordinary skill at the time of the alleged invention, upon reading the patent, is left to
17  guess how to decide whether a purchase card module should be used by itself to transmit an
18  order (as Coupa contends), or whether it should be combined with other ordering modules (as
19  Ariba contends)."  Resp. Br. at 18-19.  This argument is predicated on the straw man that the
20  corresponding function of the order generating means is transmitting the order.
21        The function of the order generating means—whether under Ariba's proposal or Coupa's
22  proposal—is simply "deciding" or "choosing" which ordering module(s) to use.  The order
23  generating means selects the ordering module(s) that will be used; the order generating means
24  does not itself transmit orders—an ordering module does that.  *See, e.g.,* 19:33-34.  The
25  algorithm identified in Ariba's corresponding structure decides whether the p-card module
26  and/or a DO or PO module will be selected for use.  The order generating means algorithm has
27  no logic for transmitting an order since an ordering module (DO or PO) transmits orders to
28  suppliers; the order generating means only has logic for selecting the ordering modules for use.

9

In its legal analysis, Coupa improperly conflates cases where it is disputed whether <u>any</u> structure is recited with cases in which only the sufficiency (but not the existence) of the algorithm is disputed.  It is the latter which are relevant and which hold that if the specification discloses structure that goes beyond restating the function, it need not disclose the exact "mathematical algorithm."  *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1384-86 (Fed. Cir. 2011).  Critically, "knowledge of one skilled in the art can be called upon to flesh out a particular structural reference in the specification . . . ."  *Creo Products, Inc. v. Presstek*, *Inc.*, 305 F. 3d 1337, 1347 (Fed. Cir. 2002).  In contrast, if the specification merely restates the function, there is nothing for an expert to shed light on.  *See e.g. Noah,* 375 F.3d at 1313 (classifying *BlackBoard* as a no algorithm case); *Function Media, LLC v. Google, Inc.* 708 F.3d 1310, 1318 (Fed. Cir. 2013) (citing *Noah* for this point).

Coupa does not contest that the specification gives a step-by-step algorithm for deciding whether to use a p-card, and then another step-by-step algorithm for deciding whether to use a DO module or a PO module.  Instead, Coupa only contests that the disclosed structure would run both algorithms for a single line item.[3]  Resp. Br. at 18-19.  As such, Dr. Shamos's testimony is relevant as the uncontested view of the specification in the eyes of a POSITA.

Thus, as established *supra*, the uncontroverted testimony of Dr. Shamos and the intrinsic evidence, shows that the p-card module can be chosen together with a DO or PO module in the preferred embodiment.  *See* III.A.1, *supra*.  Drawing all justifiable inferences in favor of Ariba, Coupa has failed to show that the claim term "order generating means" is insolubly ambiguous by clear and convincing evidence.  *See Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1343 (Fed. Cir. 2011) ("Based on the expert testimony, there are genuine disputes of material fact regarding whether the specification discloses algorithms for [the disputed]

---

[3] Coupa's conclusion that the p-card module is independent of other ordering modules (drawn from the "If not [the p-card module], choose a different ordering module") is logically flawed. Resp. Br. at 17:25-26:4.  The specification teaches that the system "chooses a different ordering module" (exits the p-card module subroutine) when the system determines that the p-card module cannot be used to help create the order.  20:8-22.  That fact says absolutely nothing about whether a p-card module can be used with another ordering module in the circumstance when the p-card module can be used.

10

means.") (emphasis added); *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1245-46 (Fed. Cir. 2007) (same).

### B. Deciding Between at Least One of a Purchase Card Module, a Direct Order Module, and a Purchase Order Module

Coupa's sole argument that the "deciding between" limitation of Claims 35 and 41 is subject to §112(f) is that the language parallels (minus the words "means for") the "order generating means" limitation of Claim 1, which the parties agree is subject to §112(f). Resp. Br. at 18-19. However, the Federal Circuit has repeatedly reversed district courts on this precise issue. *See, e.g.*, *O.I. Corp. v. Tekmar Co., Inc.*, 115 F.3d 1576, 1583-84 (Fed. Cir. 1997) ("We understand that the steps in the method claim are essentially in the same language as the limitations in the apparatus claim, albeit without the 'means for' qualification. However, . . . we would not agree with [Defendant] that the "parallelism" of the claims means that the method claims should be subject to the requirements of section 112, ¶ 6."), *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1028 (Fed. Cir. 2002); *Respironics, Inc. v. Invacare Corp.*, 303 Fed. Appx. 865, 876 (Fed. Cir. 2008). *See also generally Alza Corp. v. Impax Labs, Inc.*, C03-4032, 2005 WL 6220093, at *3 (N.D. Cal. Mar. 10, 2005) ("If [the presumption] were significantly weaker, the quantum of structure that claimants would be required to include in their claims to *avoid* § 112, ¶ 6 would rival the amount of structure typically found in the specification when a claim *is* interpreted under § 112, ¶ 6.") (emphasis in original).

### C. Approval Path Determining Means

#### 1. Function

| **approval path determining means, responsive to the requisition record [and] to approval rules in an approval rules database, for determining an approval path for the requisition record, among various ones of a plurality of possible approvers, required to approve the requisition record based on the commentary entry** ||
|---|---|
| Ariba's amended construction | Coupa's construction |
| Determining <u>which approvers need to approve the requisition record, and in what order</u> ~~an approval path for the requisition record~~. | The phrase "responsive to the requisition record to approval rules in an approval rules database" is unintelligible, and therefore invalid as indefinite.<br><br>To the extent that phrase is not indefinite, the function is: "in response to the requisition record to approval rules in an approval rules database, determining which approvers need to approve the |

11

| | requisition record, and in what order, wherein the approvers and order is determined based on the commentary entry." |
|---|---|

*Scrivener's Error*:  Coupa's only objection to Ariba's request that the Court correct the scrivener's error is one of process, not substance.  Coupa contends that Ariba "should have sought a certificate of correction from the Patent Office" when it filed this lawsuit.  Resp. Br. at 23.  However, Ariba is not required to seek a certificate of correction since, "It is well-settled law that, in a patent infringement suit, a district court may correct an obvious error in a patent claim."  *CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1358 (Fed. Cir. 2011).  Not surprisingly, Coupa cites no case law that would <u>require</u> that Ariba petition the PTO for a certificate of correction.  Resp. Br. at 22-23.

*Based on the commentary entry*:  In its responsive brief, Coupa adds a new twist to its reading of the phrase "based on the commentary entry" to argue that "either the system determines the approval path based on the commentary entry (as Coupa proposes), or a human approver must be required to approve a requisition based on the commentary entry (as Ariba proposes)."  Resp. Br. at 22.  From this Coupa argues that Claim 1 is invalid, either for lack of corresponding structure (if its proposed function is adopted) or because the claim is a mixed method/apparatus claim.   Coupa is wrong for two reasons.

First, in its opening brief, Ariba argued that the approval path is not determined by the content of the commentary entry.  Br. at 10-11.  In the context of making this argument, Ariba quoted the specification regarding how the content of the commentary entry could be considered by users of the system (approvers) but did not argue that the act of approval was a limitation on the claim..  Therefore, Coupa's argument is predicated on a non-existent Ariba contention.

Second, "[t]he conclusion of *IPXL Holdings* was based on the lack of clarity as to when the mixed subject matter claim would be infringed."  *See Microprocessor Enhancement Corp. v. TI*, 520 F.3d 1367, 1374-75 (Fed. Cir. 2008).  There is no similar ambiguity here—Coupa infringes by selling a system which enables required approvers to approve the requisition based on a commentary entry.  According to the undisputed intrinsic evidence, the claimed system enables "required approvers" to make their decisions in part based on the commentary entry

12

1 because the system collects, stores, and displays this commentary entry.  Br. at 10-11 (citing the

2 patent and prosecution history).  Thus, the claim merely "place[s] functional limitations on the

3 apparatus[] by describing the capabilities of the apparatus[]," and is not indefinite.  *See Yodlee,*

4 *Inc. v. CashEdge, Inc.*, No. 05-01550, 2006 WL 3456610, at *5 (N.D. Cal. Nov. 29, 2006).

5       **2.**      **The Corresponding Structure**

6     *Ariba's Structure is not a "Black Box"*:  A system would not infringe this claim if it did

7 not: (1) apply approval rules (2) with an if-then conditional structure, and so Ariba's proposed

8 structure does not claim all ways to determine an approval path.  *ePlus, Inc. v. Lawson Software,*

9 *Inc.*, 700 F.3d 509, 520 (Fed. Cir. 2012) (distinguishing *Typhoon Touch* because"[t]he problem

10 here is not the adequacy of the substance or form of the disclosure, but the absence of any

11 disclosure at all.")

12     Ariba's unanswered legal authority requires excluding the "responsive to" clause from

13 the function.  Br. at 10.  Thus, a black-box structure would cover any software "determining

14 which approvers need to approve the requisition, and in what order."  Yet Ariba's structure only

15 covers  approval path software based using approval rules to set a path.  It would not, for

16 example, read on a system that prompts a supervisor to set an approval path.

17     Moreover, the approval rules have a particular structure which further limits the claims'

18 scope: they are conditional if, then rules.  *See* Br. at 11-12.  As such, to apply these rules, the

19 system evaluates the predicate condition—*e.g.*, is the amount of purchase over $25,000 and for

20 software—and, if true, applies the consequence—*e.g.*, the Information Systems department must

21 approve the purchase.  *See* 5:66-6:3; *see also* 16:35-17:9; fig. 3c.  Critically, Coupa does not

22 offer any evidence or argument to cast doubt on Dr. Shamos's testimony that this is how the

23 system inherently operates in light of the specification.  *See* Shamos Decl. ¶¶ 58-70; *Rembrandt*,

24 641 F.3d at 1342-43.

25     *Ariba's Structure is readily understood by persons of skill in computer programming*:

26 Coupa argues that because the specific approval rules are customizable for each company, the

27 claim is indefinite.  But Coupa cites no authority that customizable systems cannot be claimed

28 with means-plus-function language.  As Dr. Shamos explains, the algorithm to apply if-then

13

1 rules is readily implemented by a person of ordinary skill in the art. *See,* Shamos Decl. ¶¶ 63,
2 69. While the rules themselves may vary, the algorithm applying these rules is sufficiently
3 defined. As such, Coupa has not established clear and convincing evidence that a person of
4 ordinary skill in the art would not understand the metes and bound of the invention.

### D. Approval Path Handling Means

#### 1. The Function

Coupa misleadingly claims that "Ariba's expert contends that there is no disclosure of <u>a system</u> that generates a global approval indication 'based on a commentary entry'," citing to Shamos Tr. at 131:4-7. Resp. Br. at 21. In fact, Dr. Shamos was not discussing a "global approval indication" at all but instead testified about the approval path <u>determining</u> means, stating that "the approval path determining means itself can't consider the commentary entry." Tr. at 131:4-7. However, approvers are shown commentary entry while deciding whether to approve the requisition. *See* Br. at 13-14, Shamos Decl. ¶¶ 74-80. And because the global approval indication is comprised of these individual approvals, the specification does disclose a system-generated global approval indication based on the commentary entry. *Id.*

Under this proper reading[4] of the claim language, the wherein clause merely restates an inevitable result. Br. at 13-14. It merely requires that (1) the system be capable of generating a global approval indication in response to successfully traversing the approval path; and (2) the approval path can be successfully traversed where the approvers approve the requisition in view of the commentary entry. The global approval indication is just the system state in which all required approvals have been completed. *See* Shamos Decl., ¶¶ 74-75. As claim 1 is a system claim, and not a method claim, the "approval path handling means" has the capability to guide the requisition along the approval path, and this inherently has the capability to do so successfully—it does not matter that some requisitions may not be globally approved. Second, as explained *supra*, the approval path handling means already requires a system enabling

---

[4] However, even if the Court adopted Coupa's function, there is corresponding structure. *See* 19:28-29; Table 1, Field 2; Shamos Decl. ¶¶ 91-94.

14

approvers to consider commentary entry. As such, the "wherein" clause is a necessary result of successfully traversing the approval path, and should be excluded from the claimed function.

### 2. Corresponding Structure

Coupa ignores the aspects of Ariba's proposed structure that extend well beyond a black box. In order to guide the requisition along the approval path, the approval path handling means must determine where the requisition record should go. Ariba's structure shows how this decision is made: if the requisition is (1) denied or (2) modified, it is removed from the approval path, but if the requisition is (3) approved, it is forwarded to the next approver on the path if one exists. *See* Br. at 14-15, Shamos Decl., ¶¶ 81-90. This is shown both by the arrows in Figure 3c and the corresponding specification. *Id.* (citing both the figure and the specification). As such, Claim 1 does not simply claim "any computer-related device or program that performs the [claimed function]." *Cf. Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F. 3d 1371, 1383 (Fed. Cir. 2009) (explaining the Court's basis for rejecting a "black box" as corresponding structure).

Coupa further protests that Ariba's proposed structure merely restates the function of "guiding the requisition" as "pass[ing] the requisition to the next required approver." However, the plain and ordinary meaning of the function "guiding" implies the means directs the requisition record along the path, not that the means physically moves the requisition record from approver to approver. Accordingly, Ariba's function describes where the requisition record is to go under what circumstances.

## IV. CONCLUSION

Ariba respectfully requests that the Court adopt its proposed claim constructions.

DATED: August 2, 2013  COVINGTON & BURLING LLP

By: /s/ *Amy K. Van Zant*
Attorneys for Plaintiff

15