Kelly C. Hunsaker (SBN 168307 / hunsaker@fr.com)
Enrique D. Duarte (SBN 247523 / duarte@fr.com)
Betty H. Chen (SBN 290588 / bchen@fr.com)
Thomas B. Manuel (SBN 254186 / manuel@fr.com)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, California 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Bryan A. Blumenkopf (SBN 286266 / bkb@fr.com)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, California 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Attorneys for Defendant
COUPA SOFTWARE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| ARIBA, INC., <br><br> Plaintiff, <br><br> v. <br><br> COUPA SOFTWARE INC., <br><br> Defendant. | Case No. _3:12-cv-01484 WHO <br><br> **COUPA'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT** <br><br> Date: August 6, 2014 <br> Time: 2:00 p.m. <br> Courtroom: 2, 17th Floor |

■**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

I.    INTRODUCTION ................................................................. 2

II.   PROCEDURAL SUMMARY .............................................. 3

III.  UNDISPUTED FACTS ....................................................... 4

    A.    The '165 Patent-in-Suit ............................................. 4

         1.    Claim Scope: Claim Language and Claim Construction ......................... 4

         2.    Estoppel Facts:  The Prosecution History ................................. 6

    B.    The Coupa Product vs. Custom Code ................................. 7

         1.    The Coupa Product ........................................ 7

         2.    Custom Code & ERP Integrations ........................... 8

         3.    The ███ Custom Software .................................... 10

    C.    Ariba's Infringement Contentions & Response to Interrogatory 11 ......... 10

IV.  LEGAL STANDARDS ...................................................... 12

    A.    Summary Judgment ........................................ 12

    B.    Burden of Proof ......................................... 13

    C.    Infringement ........................................... 13

         1.    Direct Infringement ...................................... 14

         2.    Indirect Infringement ..................................... 14

V.   ARGUMENT ................................................................ 15

    A.    Coupa Does Not Directly Infringe the '165 Patent, Literally or by Equivalents ........................................... 15

         1.    The Function of the "Order Generating Means" is Missing ......... 15

             a.    The Coupa Software Always Generates a Purchase Order ............................... 15

             b.    There is No Direct Order Module to Choose From ......... 18

             c.    There is No "Purchase Order Module" to Choose From ............................. 19

                 i.    Purchase Orders are Created in Coupa ............. 19

                 ii.    The ███ Custom Software does not create a genuine dispute concerning the Purchase Order Module ............................... 20

d. Coupa does not infringe under the Doctrine of Equivalents .................................................................. 21

i. Prosecution History Estoppel applies to bar treating "purchase orders" and "requisitions" as equivalent .................................................. 21

2. The Structure of the "Order Generating Means" is Missing .................. 22

B. Coupa Does Not Indirectly Infringe the '165 Patent ......................... 23

1. There Is No Underlying Act of Direct Infringement ............................. 23

2. The Other Elements of Indirect Infringement Are Not Met .................. 24

VI. CONCLUSION ........................................................................................ 25

Page(s)

**Federal Cases**

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.,*
261 F.3d 1329 (Fed. Cir. 2001)..................................................................14

*Alpex Computer Corp. v. Nintendo Co.,*
102 F.3d 1214 (Fed. Cir. 1996)..................................................................21

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)..................................................................................13

*Bayer AG v. Elan Pharma. Res. Corp.,*
212 F.3d 1241 (Fed. Cir. 2000)..................................................................13

*Carborundum Co. v. Molten Metal Equipment Innovations, Inc.,*
72 F.3d 872 at n. 4 (Fed. Cir. 1995)...........................................................24

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)..................................................................................13

*Cook Biotech Inc. v. Acell, Inc.,*
460 F.3d 1365 (Fed. Cir. 2006)..................................................................13

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
535 U.S. 722 (2002)..................................................................................14

*General Protecht Group, Inc. v. International Trade Com'n,*
619 F.3d 1303 (Fed. Cir. 2010)..................................................................15

*Global-Tech Appliances, Inc. v. SEB S.A.,*
131 S.Ct. 2060 (2011)...............................................................................15

*Kemco Sales, Inc. v. Control Papers Co., Inc.,*
208 F.3d 1352 (Fed. Cir. 2000)..................................................................14

*Limelight Networks, Inc. v. Akamai Technologies, Inc.,*
134 S.Ct. 2111 (2014)...............................................................15, 16, 23, 24

*London v. Carson Pirie Scott & Co.,*
946 F.2d 1534 (Fed. Cir. 1991)..................................................................13

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
475 U.S. 574 (1986)..................................................................................13

*Muniauction, Inc. v. Thompson Corp.,*
532 F.3d 1318 (Fed. Cir. 2008)..................................................................13

*Nazomi v. Nokia,*
739 F.3d at 1345........................................................................................17

iii

*Odetics, Inc. v. Storage Tech. Corp.*,
  185 F.3d 1259 (Fed. Cir. 1999) ................................................................. 15

*Ring & Pinion Serv. Inc. v. ARB Corp. Ltd.*,
  743 F.3d 831 (Fed. Cir. 2014) ............................................................. 15, 21

*Salazar v. Procter & Gamble Co.*,
  414 F.3d 1342 (Fed. Cir. 2005) ........................................................... 14, 21

*Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*,
  183 F.3d 1347 (Fed. Cir. 1999) ........................................................... 14, 23

*Trading Tech. Intern., Inc. v. Open E Cry, LLC*,
  728 F.3d 1309 (Fed. Cir. 2013) ................................................................. 21

*Wolverine World Wide, Inc. v. Nike, Inc.*,
  38 F.3d 1192 (Fed.Cir.1994) .................................................................... 13

**Other State Cases**

*Nazomi Communications, Inc. v. Nokia Corp.*,
  2012 WL 3536768, *aff'd Nazomi Communications, Inc. v. Nokia Corp.*, 739 F.3d
  1339 (Fed. Cir. 2014) ................................................................. 17, 18, 24

**Federal Statutes**

35 U.S.C. 271(b) ................................................................................... 3

35 U.S.C. 271
  §§ (b) and (c) .................................................................................... 1

35 U.S.C.
  § 271(a) ......................................................................................... 1
  § 271(b) ........................................................................................ 14
  §§ 271 (b) and (c) ............................................................................. 25
  § 271(c) ........................................................................................ 14

**Other Authorities**

Fed.R.Civ.P. 56(c) ............................................................................... 12

Federal Rule of Civil Procedure 56 ............................................................... 1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 6, 2014 at 2:00 p.m., or as soon as the matter may be heard by the Honorable William H. Orrick III in Courtroom 2, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Coupa Software Inc. ("Coupa") shall and hereby does move the Court pursuant to Federal Rule of Civil Procedure 56 for summary judgment of non-infringement. Coupa's motion is based on this notice of motion and supporting memorandum of points and authorities, and the depositions, documents, declarations and other evidence submitted in support thereof, as well as such other written or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

## RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 56, Coupa seeks an order granting summary judgment of non-infringement on all asserted claims of the '165 patent, entering judgment in favor of Coupa as a matter of law and dismissing Ariba's complaint with prejudice.

## STATEMENT OF ISSUES TO BE DECIDED

(1) Whether Coupa is entitled to summary judgment of no direct infringement under 35 U.S.C. § 271(a) because the accused Coupa Product does not include the function or structure of the "order generating means" of the '165 patent, as required by all asserted claims and construed by the Court; in particular, because the Coupa Product always generates a Purchase Order automatically upon requisition approval, and never functions to decide between a Direct Order Module or Purchase Order Module to submit a requisition for fulfillment by a supplier.

(2) Whether Coupa is entitled to summary judgment of no indirect infringement under 35 U.S.C. 271 §§ (b) and (c) where there is no underlying act of direct infringement, where functionality of the "order generating means" is contrary to the design intent of the Coupa Product and neither taught nor intended by Coupa, and where Coupa did not even know about the '165 patent before this lawsuit was filed, as each are required for indirect infringement.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Unlike the system claimed in Ariba's '165 patent, which decides among ways of placing an order "*other than* through a purchase order," the Coupa e-procurement software automatically generates a purchase order immediately every time a requisition is approved. Unlike the '165 patent, the Coupa product was designed as a standalone e-procurement product that avoids reliance on secondary systems for any part of the procurement flow. The '165 patent, on the other hand, touts its ability to leverage existing enterprise systems as one of the key benefits of the invention. It claims a requisitioning tool layered on top of an existing ERP system that can transmit *requisitions* directly to suppliers, but which otherwise relies on the ERP system to generate and transmit *purchase orders*. In contrast, Coupa was designed to own the purchase transaction and remove this type of complexity by avoiding dependency on legacy ERP systems for any part of the procurement transaction. In short, the accused Coupa software was designed and built from scratch with the opposite goal in mind from the one claimed in the '165 patent.

Coupa immediately generates a purchase order every time a requisition is approved, regardless of payment method, regardless of transmittal method and regardless of a customer's optional integration of purchase data with their ERP system for financial reporting and analytics purposes. As such, the accused Coupa software is missing the function of the "order generating means" for selectively deciding between the set of three ordering modules required by the '165 patent. The Coupa product includes no functionality of choosing either a "Direct Order Module" or a "Purchase Order Module," because it *only* sends purchase orders to suppliers, never requisitions, and because it does not transmit requisitions to ERP systems for the purpose of generating a purchase order. Without the claimed function, it is no surprise that the Coupa software also lacks the corresponding structure of the "order generating means." Since Coupa always generates a purchase order, it never checks the item template for a transfer method at all, and checks the supplier profile only for how to send a purchase order, not for a DO or PO Module. The function and structure of the order generating means are both required by every asserted claim of the '165 patent, and any one of these grounds is sufficient to grant summary judgment of non-infringement.

Throughout this case, Ariba has maintained an infringement theory that conflates "requisitions" and "purchase orders," in direct contradiction with the prosecution history, the claim language, the specification and this Court's claim construction order. The order generating means for deciding between ordering modules "other than through a purchase order" was the sole basis on which the '165 claims were allowed; and Ariba cannot now claim the same thing infringes. This is not a factual dispute, but a legal one appropriate for resolution on summary judgment.

Worse still, Ariba's infringement theory is predicated on a purely *theoretical* misuse of Coupa's product that finds no evidentiary support and relies on "ERP or other software" *not provided by Coupa* as supposedly satisfying the "order generating means." Recent U.S. Supreme Court and Federal Circuit cases make clear that this is not direct infringement by Coupa *or* its customers as a matter of law. And without any direct infringement, there can be no indirect infringement as a matter of law, particularly on a theory that conflicts with the design intent of the Coupa product and is inconsistent with Coupa's recommended practices. Ariba's infringement arguments fail as a matter of law. There is no genuine material factual dispute and Coupa is entitled to summary judgment as a matter of law.

## II. PROCEDURAL SUMMARY

On March 23, 2012, Ariba filed this lawsuit alleging that Coupa infringed Ariba's '165 patent. [D1; Ex. A ('165 Patent).] [1] On October 24, 2013, this Court issued its Claim Construction Order adopting several constructions that preclude a finding of infringement. [D71; Ex. B (Order).] On December 23, 2013, Ariba served Amended Infringement Contentions. [Ex. C (Amended Infringement Contentions Cover Pleading).] In them, Ariba dropped all but one independent claim, the "means-plus-function" system claim of Claim 1. *Id*. On January 10, 2014, Ariba filed a first amended complaint adding an allegation that Coupa indirectly infringes the '165 patent under 35 U.S.C. 271(b) by inducing others to infringe. [D84.] Fact discovery is nearly complete and closes July 16, 2014. Ariba has taken extensive discovery from Coupa and third-party discovery from Coupa's customers. Trial is set for January 20, 2015.

---

[1] Unless otherwise indicated, all citations to exhibits herein refer to exhibits attached to the Declaration of Enrique D. Duarte ("Duarte Decl.").

III. **UNDISPUTED FACTS**

A. **The '165 Patent-in-Suit**

1. **Claim Scope: Claim Language and Claim Construction**

Claim 1, the only asserted independent claim, is written in means-plus-function form. It generally recites means for generating a requisition, means for determining an approval path, means for guiding the requisition along the approval path, means for generating an electronic receipt, and an *order generating means* for deciding between three specified ordering modules to submit the requisition for fulfillment by a supplier.[2] Specifically, the "order generating means" reads in full as follows:

> "order generating means *for deciding between at least one of a purchase card module, a direct order module, and a purchase order module to submit the requisition for fulfillment by a supplier.*"[3]

The remaining Asserted Claims (2-7, 13-15, 18, 20-22 and 24) are all dependent upon Claim 1 and incorporate each of its requirements, including the "order generating means."[4]

The Court's October 24, 2013 Claim Construction Order adopted the following constructions for the "order generating means," the "Purchase Order Module," and the "Direct Order Module":

| Claim Element | Court's Construction [Ex. B] |
|---|---|
| order generating means for deciding between at least one of a purchase card module, a direct order module, and a purchase order module to submit the requisition for fulfillment by a supplier (Claim 1) | **Function**:<br>Deciding between a set of ordering modules to submit the requisition for fulfillment by a supplier, where the set of ordering modules includes at least one purchase card module, one direct order module, and one purchase order module<br><br>**Structure:**<br>[1] "For each fully approved requisition, [the system] verifies whether a p-card can be used for this purchase: Ensure that the supplier accepts p-cards. If not, chooses a different ordering module." ['165 Patent at 20:5-9.]<br><br>[2] "[The system] [c]hecks that the transfer method has been designated for direct order in the item template. If neither the purchase order (PO) or DO order module has been designated in the item template then the supplier profile will be checked for the transfer method. If the |

---
[2] Ex. A ('165 Patent) at Claim 1.
[3] *Id.* at 27:15-19.
[4] *Id.* at 27:20-28:59.

| Claim Element | Court's Construction [Ex. B] |
|---|---|
| | supplier profile indicates direct order, then that is the method. Otherwise, it is treated as a PO." ['165 Patent at 21:7-14.] |
| Purchase Order Module | An ordering module that transmits a requisition to an ERP system, for generating a purchase order |
| Direct Order Module | An ordering module that transmits a requisition directly to a supplier for fulfillment based on a direct order agreement between the company and the supplier, without storing the requisition in an ERP system |

In its Claim Construction Order, this Court rejected Ariba's attempts to blur the distinction between a "requisitions" and "purchase order," noting express distinctions in the '165 patent specification between a "requisition" and a "purchase order":

> "The specification states: 'The purchase order module is an ordering module whose case results in a purchase *requisition* in the ERP system. The system transmits the *requisition* to the ERP adapter, *as an ERP requisition*. Once the *requisition* is in the ERP, the Purchasing Agent can manipulate it with standard ERP operations to complete the process. For example, the agent typically autocreates a *purchase order* from the *requisition*, prints it out, an [sic] sends it to the supplier for fulfillment. Id. at 21:26-35. Elsewhere the specification explains that once *requisitions* are in the ERP 'they are converted into *Purchase Orders* on the ERP system.' *Id.* at 23:52-56."[5]

Accordingly, the Court declined to adopt constructions that blurred the distinction between "requisitions," on the one hand, and "purchase orders" on the other:

> The specification thus distinguishes the Purchase Order Module from the Direct Order Module…on the basis that the Purchase Order Module transmits *requisitions* into the ERP where they are converted into *purchase orders* and then sent to the supplier, whereas the Direct Order Module communicates directly with a supplier without storing the requisition in an ERP system. ***It would be improper to construe [the Purchase Order module] in a manner that blurs that distinction.***[6]

Similarly, in construing the Direct Order module, the Court again rejected Ariba's attempt to blur the patent's distinction between a requisition and a purchase order:

> "The Court therefore concludes that ***the Direct Order Module transmits a requisition, not an order, to the supplier***….Indeed the specification unambiguously states that the Direct Order Module 'transmits the *requisition* directly to the supplier."[7]

---

[5] Ex. B (Order) at 16:14-24.
[6] *Id.* at 16:14-17:12 (citing '165 patent at 21:26-34, 23:52-56).
[7] *Id.* at 19:3-9 (citing '165 patent at 21:15, 30:8-11).

## 2.     Estoppel Facts:  The Prosecution History

Remaining faithful to the distinction between a requisition and purchase order is also required by the prosecution history.  The '165 patent is based on a patent application filed by Ariba on October 28, 1999 that issued seven years later on October 3, 2006.[8]  The lengthy prosecution resulted from Ariba initially pursuing broad claims in a crowded field where companies like IBM and others had already been awarded pioneering e-procurement patents.  The Patent Office recognized this and rejected Ariba's application *five times* as obvious in view of U.S. Patent Nos. 5,319,542 (King), 5,758,327 (Gardner), and 5,315,504 (Lemble), among other prior art.  In response to each rejection, Ariba made narrowing amendments adding various additional limitations, *e.g.,* a commentary entry, electronic receipts, and facilitating payment, among others.[9]  But still the Patent Office maintained its rejections of all claims.[10]  IBM's prior art patent to John King posed particular problems for Ariba.  It disclosed automating "*all* manual transactions in the requisition process" and generating a purchase order to be sent electronically to a supplier.[11]  Similarly, the Gardner patent disclosed an electronic requisitioning system that automatically generated one or more purchase orders to be sent directly to a supplier via a company-specific business-application or the central computer system, via fax, EDI (electronic data exchange) or other transmission method.[12]

After the PTO's fifth and final rejection, Ariba added the "order generating means" limitation for deciding between the three specified ordering modules to submit requisitions for fulfillment.[13]  In doing so, Ariba distinguished prior art systems that only decide how to send *purchase orders*.  Specifically, Ariba argued three separate times that the prior art only disclosed ordering using a purchase order, but disclosed "no decision making process to choose a preferred ordering method ***other than through a purchase order.***"[14]  Thus, while choosing how to send purchase orders was well known, Ariba argued that choosing a preferred ordering method *other*

---

[8]   *See* Ex. D ('165 File History Excerpts).
[9]   *Id.* at ARICOU00000235-36 (Oct. 15, 2002 Am. at 14-15); ARICOU00000362, 374-375 (Mar. 31, 2004 Am. at 2, 10-13); ARICOU00000272 (Apr. 10, 2003 Am. at 2).
[10]   *Id.* at ARICOU00000476 (Office Action, Sept. 13, 2004 at 1).
[11]   *Id.* at ARICOU00000205 (Jul. 15, 2002 Rejection at 6); ARICOU00000488 (Sep. 13, 2004 Rejection at 13 (emphasis removed)).
[12]   *Id.*
[13]   Ex. D ('165 File History Excerpts) at ARICOU00000516-517 (Jan. 19, 2005 Am. at 2-3).

*than through a purchase order* to submit a requisition for fulfillment was not. With this narrowing amendment adding the "order generating means," the claims of the '165 patent were allowed.

### B. The Coupa Product vs. Custom Code

#### 1. The Coupa Product

Ariba alleges infringement by all Coupa e-procurement software since 2006.[15] Coupa's e-procurement product is part of a software suite having versions designated by "stable" numbers (i.e. ███████████████████, collectively referred to here as the Coupa Product.[16] The Coupa Product is distributed in a SaaS model (software-as-a-service) hosted in a cloud server platform.[17] Each Coupa customer has their own instance of the Coupa Product "in the cloud," and each customer's instance is easily updated to the most recent stable version.[18] Thus, with one exception described below, all Coupa customers use the Coupa Product as described in this section.[19]

The Coupa Product always automatically creates one or more Purchase Orders immediately every time a requisition is approved.[20] Once the PO is created in Coupa, it is sent to suppliers via email, cXML, EDI (electronic data interchange), or manually by a buyer, depending on the PO Transmission Method field of the supplier profile.[21] Based on this field, the Coupa Product will either automatically send the PO directly to the supplier, or it will not send the PO out of Coupa at all.[22] Importantly though, none of the PO Method fields in the supplier profile relate to ERP integration or cause POs to be sent to a supplier via an ERP system.[23] Nor is there any other code,

---

[14] *Id.* at ARICOU00000518-535 (Jan. 19, 2005 Am. at 3, 10, 12, 14-15, 20).
[15] Ex. C (Amended Infringement Contentions) at 2:22-9.
[16] Ex. F (Coupa's May 20, 2014 Interrogatory Response) at 5:8-22.
[17] *Id.*
[18] *See* Ex. G (Excerpts from the May 22, 2014, Deposition Transcript of David Williams (hereafter "Williams")) at 47:1-48:4.
[19] *Id.*.
[20] *See* Ex. E (Summary of Excerpts); *see also* Ex. I (Coupa User Guide) at COUPA0067744, COUPA0067751; Ex. J (Coupa Best Practices Template) at COUPA0005820, COUPA0005822, COUPA0005825-COUPA0005827; Ex. K (Coupa Integration Guide) at COUPA0003573; Ex. L (Coupa Suite Life Brochure) at COUPA0117915, COUPA0117922; Ex. M (Coupa Compliance Overview) at COUPA118632; Ex. G (Williams) at 321:4-10; Ex. N (Excerpts from the January 17, 2014 30(b)(1) Deposition Transcript of Ravi Thakur (hereafter "Thakur I")) at 63:10-22, 102:9-22; Ex. H (Thakur II) at 234:24-235:13.
[21] *See* Ex. I at COUPA0067737; Ex J at COUPA0005827; Ex. K at COUPA0003571; Ex. L at COUPA0117916; Ex. O (Coupa screenshots re PO transmission).
[22] Ex I (Coupa User Guide) at COUPA0067737; Ex. G (Williams) at 78:3-79:15, 299:17-300:10, 322:25-323:17; Ex. H (Thakur II) at 44:3-10.
[23] Ex. G (Williams) at 296:18-297:17, 322:22-323:17; Ex. N (Thakur I) at 240:6-19, 241:22-242:23;

1 configuration or setting in the Coupa Product to selectively send some POs to suppliers via Coupa,

2 and other POs to suppliers via an ERP system.[24]  The Coupa Product never sends a requisition

3 directly to a supplier; nor does it send a requisition to an ERP system for the purpose of generating a

4 purchase order.[25]

5 **2. Custom Code & ERP Integrations**

6 Coupa is designed as a standalone procurement system that incorporates the procurement

7 flow and "owns the transaction" without relying on a secondary system like ERP, but which can

8 flexibly be integrated with customers' own ERP systems for purposes of financial reporting and

9 analytics.[26]  Thus, Coupa's customers can optionally synchronize data between their ERP system

10 and the Coupa Product.[27]  Customers may send supplier or user data from their ERP system into

11 Coupa, for example; or they may retrieve transactional data like Purchase Orders from Coupa into

12 their ERP system for purposes of reporting and analytics.[28]  Integration code between Coupa and an

13 ERP system can be written by the Coupa integrations team, by third-party vendors or by the Coupa

14 customer.[29]  Integrations are specific to each customer and not part of the stable Coupa Product

15 available to all customers in the cloud.[30]

16 Even when a customer optionally integrates Coupa with their ERP system, the Coupa

17 Product still always immediately generates a Purchase Order when a requisition is approved and

18 sends the PO to suppliers.  The Coupa Software Integration Guide makes this clear:[31]

19 
20 ## 5   Purchase Orders

21 ### 5.1   Description

22 In Coupa, after a requisition is approved, it immediately becomes a purchase order.
Purchase orders can be transmitted to suppliers via email, cXML, or manually.

23 

24 [24] Ex. G (Williams) at 321:11-322:4; Ex. N (Thakur I) at 241:22-244:2.
[25] Ex. N (Thakur I) at 248:2-18, 249:4-9; Ex. G (Williams) at 160:10-16, 161:1-4.  Note that the

25 ▮▮▮ Custom Product is different software from the stable Coupa Product, and operates differently based on different source code.  As described below, unlike the Coupa Product, the

26 ▮▮▮ Custom Software sends all requisitions to ERP and none out of Coupa.
[26] Ex. G (Williams) at 28:17-24, 29:2-3, 29:14-21, 30:9-31:17, 32:18-22, 33:1-35:12, 35:21-36:10,

27 36:20-37:2, 37:13-18.
[27] *Id.*

28 [28] *Id.*; see also Ex. G (Williams) at 62:23-63:4, 296:18-298:8; Ex. N (Thakur I) at 114:15-115:8.
[29] Ex. G (Williams) 62:4-15; Ex. H (Thakur II) at 40:4-17, 43:5-14, 126:11-18.
[30] Ex. G (Williams) at 62:17-4, 63:12-20; Ex. H (Thakur II) at 126:11-23, 237:2-11, 238:10-24,
239:6-16.

Coupa makes transactional data like Purchase Orders available for extraction from Coupa to synchronize with a customer's ERP system for reporting and analytics purposes.[32] Coupa recommends integrating transaction data like Purchase Orders on an hourly basis, with Coupa as the primary system and the ERP financial system as the "synced system."[33] These integrations run on a polling schedule and retrieve *all* POs not yet exported that accumulate in the specified timeframe.[34]

In a handful of situations, some Coupa customers have implemented custom integrations that pull *all* purchase orders created in Coupa into their ERP system and send *all* of those POs to suppliers out of their ERP, and none from Coupa.[35] This implementation is determined in the sales cycle and is an "all or nothing" approach.[36] It requires custom integration code and is not achievable through any setting or configuration within the Coupa Product.[37]

Coupa has never written or supported any integration code that selectively sends some POs to suppliers from Coupa, and other POs to suppliers via ERP; nor has Coupa ever taught or encouraged customers to write their own custom code to do this.[38] And Coupa does not recommend integrating requisitions into ERP, selectively or otherwise.[39] For example, Coupa's integrations "best practices" guide does *not* list "requisitions" among recommended integrations.[40] And when Coupa created its standard Flat File format, a convention to facilitate common system integrations, it did not even create one for requisitions to be sent outbound from Coupa.[41]

Custom integrations are possible because the Coupa Product includes dormant APIs ("application programming interfaces") for programming flexibility.[42] The Coupa APIs do not themselves *do* anything; rather they merely expose an interface to certain data in Coupa that can be

---

[31] Ex. K at COUPA0003573.
[32] *See, e.g.*, Ex. P (Coupa Integration Requirements Template) at COUPA0112550; Ex. Q (Coupa Integration Schedules & File Names) at COUPA0128215; Ex. R (Purchase Order Export) at 1 of 8; Ex. G (Williams) at 62:4-63:20, 64:9-20, 297:9-298; Ex. H (Thakur II) at 218:17-25.
[33] *Id.*
[34] Ex. Q at COUPA0128215; Ex. R (Purchase Order Export) at 1.
[35] Ex. H (Thakur II) at 40:19-41:9.
[36] Ex. N (Thakur I) at 246:10-19.
[37] *Id.* at 242:24-244:2.
[38] Ex. H (Thakur II) at 239:17-243:16; Ex. G (Williams) at 321:4-322:4; Ex. N (Thakur I) at 242:9-244:15.
[39] Ex. G (Williams) at 162:3-21; Ex. N (Thakur I) at 248:2-18.
[40] Ex. P at COUPA0112550.
[41] Ex. N (Thakur I) at 108:25-109:3, 248:2-18.
[42] Ex. H (Thakur II) at 180:19-181:6, 218:17-25, 219:17-220:6; Ex. N (Thakur I) at 136:11-137:5; Ex. G (Williams) at 62:4-63:4.

accessed and extracted by other software outside the Coupa Product.[43]  The design intent and purpose of exposing data via APIs is to make data in Coupa available to other systems for financial reporting and analytics purposes.[44]

### 3.  The ▮▮▮ Custom Software

▮▮▮▮▮▮▮ does not use the Coupa Product but instead uses custom software that was jointly developed with Coupa (the ▮▮▮ Custom Software).[45]  ▮▮▮ was one of Coupa's first and largest customers.[46]  It hired Coupa to jointly develop a custom, one-off internal procurement solution.[47]  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[48]  The ▮▮▮ Custom Software is not part of the stable Coupa Product described above.[49]  It works differently and is based on different source code.[50]

In the ▮▮▮ Custom Software, *all* requisitions are extracted from Coupa into ▮▮▮ ERP system, where they are converted into Purchase Orders and sent by ▮▮▮ buyers to suppliers via ERP.[51]  The ▮▮▮ Custom Software does not send *any* requisitions or POs to suppliers directly from Coupa, and therefore also uses an "all or nothing" approach.[52]  This custom ▮▮▮ approach is illustrated in an early Coupa "Implementation Options" marketing document.[53]  No other Coupa customer has ever had access to the ▮▮▮ Custom Software or its code, nor used this kind of implementation; nor is there any code, configuration or setting in the Coupa software to choose this option in the stable Coupa Product.[54]

### C.  Ariba's Infringement Contentions & Response to Interrogatory 11

Ariba's infringement contentions base infringement, not on what the Coupa Product itself does, but on what Ariba claims theoretically *can be* done with it.  They also treat "requisitions" and "purchase orders" interchangeably.  Specifically, Ariba's Amended Infringement Contentions,

---

43  *Id.*
44  Ex. G (Williams) at 62:17-63:4, 297:17-298:16, 317:21-318:9.
45  Ex. G (Williams) at 46:18-47:11, 215:7-13, 216:3-5; Ex. H (Thakur II) at 24:24-25:22.
46  Ex. G (Williams) at 210:7-8; Ex. N (Thakur I) at 143:4-21.
47  Ex. N (Thakur I) at 143:4-21; Ex. H (Thakur II) at 27:14-28:2, 30:13-24.
48  Ex. G (Williams) at 215:7-13.
49  Ex. G (Williams) at 213:6-9, 215:7-13; Ex. H (Thakur II) at 97:13-18.
50  *Id.*
51  Ex. H (Thakur II) at 24:24-25:22.
52  Ex. H (Thakur II) at 24:1-7, 97:13-18, 117:9-22.
53  Ex. W (Implementation Options), COUPA0003522; Ex. H (Thakur II) at 24:24-25:22, 30:13-24.

served two months after this Court's claim construction order, state without support that the Coupa

e-Procurement System "functions to decide between sending *an order* directly or through an ERP

system by checking the 'PO Transmission Method' field in the supplier profile…."[55]  Coupa

propounded Interrogatory No. 11 asking Ariba to state all facts and identify all evidence supporting

this contention, and on May 14, 2014, Ariba responded that:

- "Each Coupa Order and/or Coupa Requisition contains information related to the **PO Method** field of the Supplier Profile, e.g. the transmission status and/or the supplier's **PO Method** field. ***An ERP or other software can use this information*** to filter for Coupa Requisitions and/or Coupa Orders from suppliers whose **PO Method** is set to 'Integration' and/or 'Prompt' in the drop down menu.

- Using the API, ***an ERP or other software can selectively pull*** Coupa Orders and/or Requisitions only for suppliers whose **PO Method** is set to 'Integration' and/or 'Prompt' in the drop-down menu…."[56]

It is undisputed, however, that Coupa has never written integration code or supported a customer's

integration that works in this way; nor did Ariba cite any evidence of any customer ever doing so.[57]

In fact, this is contrary to the design intent of the Coupa product, and there is no evidence Coupa

has ever taught or encouraged customers to implement integrations in this way.[58]

Ariba's Amended Infringement Contentions also rely on the *"PO Transmission Method"*

field as supposedly achieving a decision how to submit a *requisition* for fulfillment to satisfy the

function of the order generating means.[59]  Recognizing that Coupa only transmits *purchase orders*

and not *requisitions*, however, Ariba vaguely contends that Coupa "functions to decide between

sending *an order* directly or through an ERP system by checking the 'PO Transmission Method'

field in the supplier profile"; then says Coupa will "implement **the order** by transmitting ***requisition***

***information***…" to ERP or "sends the ***order***" directly.[60]  For the Direct Order module, Ariba

similarly states that the Coupa software has code "to transmit ***an order***" based on a direct order

---

[54] Ex. G (Williams) at 215:7-13, 216:3-5, 222:11-223:8; Ex. H (Thakur II) at 30:13-24; Ex. N (Thakur I) at 143:4-21.

[55] Ex S (Excerpts from Ex. A to Ariba's Am. Infringement Contentions) at 56.

[56] Ex. T (Ariba May 14, 2014, Response to Interrogatory 11) at 5:10-17.

[57] Ex. G (Williams) at 62:4-63:4, 79:6-80:5, 297:17-298:16; Ex. H (Thakur II) at 239:17-241:1, 243:3-16.

[58] Ex. G (Williams) at 63:17-64:20, 85:11-86:19, 88:3-7, 89:22-91:14, 211:4-212:21, 222:9-223:8; Ex. N (Thakur I) at 244:3-245:4; Ex. H (Thakur II) at 241:2-243:16.

[59] Ex. S (Amended Contentions) at 56-58; *see also* Ex. U (Supplier Settings) at ARICOU00302226 ("Choose how to deliver POs to this supplier.").

1  agreement, but cites documents that indisputably say "the requisition is approved in Coupa and ***the***

2  ***Purchase Order is sent to the supplier*** from Coupa."[61]  For the Purchase Order module, Ariba

3  again cites the "***PO Transmission Method***,"[62] and yet says the Coupa software has code that

4  "enables the system to transmit ***requisition information*** to an ERP system."[63]  Finally, with respect

5  to both alleged modules, Ariba contends that "[e]ven if the Court determines that ***the 'purchase***

6  ***order' sent by the Coupa system*** is not a 'requisition,'" the difference is insubstantial because an

7  order includes a line from the requisition that belongs to the order.[64]

8        For corresponding structure of the "order generating means," Ariba admits the Coupa

9  software does *not* check the item template for a transfer method: "if there is no designation in the

10  item template, ***which, in the Coupa e-Procurement software, there is not such a designation.***"[65]  It

11  then repeats this admission and acknowledges that the supplier profile is not checked for a DO or

12  PO Module, but only how to transmit a purchase order:

13        "Specifically, the Coupa e-Procurement Software contains code that checks the item
      template (***which does not contain any transfer method designation in the Coupa***
14        ***system***) and checks the supplier profile to determine the ***PO Transmission Method***,
      which determines how ***the order*** will be submitted for fulfillment by the supplier."[66]
15

16  Ariba's Amended Contentions do not identify any alleged "equivalent" structure in Coupa for

17  checking an item template for a transfer method, except to say it is equivalent with or without it; nor

18  does Ariba contend Coupa can be used to selectively decide how to submit "orders" on a

19  requisition-by-requisition basis as contemplated by the claims.[67]

20  **IV.**    **LEGAL STANDARDS**

21      **A.**    **Summary Judgment**

22        Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

23  file, and any affidavits show that there is no genuine issue as to any material fact and that the

24  movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving party bears the

25

26  [60]  Ex. S (Am. Infringement Contentions) at 56 & 58.
  [61]  *Id.* at 74-76; id. at 77 ("Thus Coupa supports transmitting an *order* directly to a supplier.")
27  [62]  *Id.* at 81.
  [63]  *Id.*
28  [64]  *Id.* at 81 & 84.
  [65]  *Id.* at 59, 63.
  [66]  *Id.* at 63.
  [67]  *Id.* at 64-65.

initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial; rather, it need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting Fed.R.Civ.P. 56(e)). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the non-moving party's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50.

**B.    Burden of Proof**

Here, Ariba bears the burden of proving infringement by a preponderance of the evidence. *Bayer AG v. Elan Pharma. Res. Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). To prove infringement, Ariba must prove that the accused Coupa products include each and every requirement of the asserted claims. *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed.Cir.1994). The absence of even a single claim requirement from the accused product precludes a finding of infringement. *See London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991). Thus, to meet its burden on summary judgment, Coupa need only point to the absence of evidence on any one claim requirement. If the accused device does not infringe an independent claim, then it also cannot infringe any claims that depend upon that independent claim. *Muniauction, Inc. v. Thompson Corp.*, 532 F.3d 1318, 1328 n.5 (Fed. Cir. 2008).

**C.    Infringement**

An infringement analysis requires a two-step process: (1) construing the asserted claims to determine their scope and meaning; and (2) comparing the construed claims to the accused device or method. *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1372 (Fed. Cir. 2006).

### 1. Direct Infringement

To prove direct infringement, a patent holder must establish by a preponderance of the evidence that every requirement of at least one asserted patent claim is present in the accused product, literally or under the doctrine of equivalents. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). Generally speaking differences between a claim and the accused product are "equivalent" if they are insubstantial, such as if they perform substantially the same function, in substantially the same way to achieve substantially the same result. *Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000). Thus, equivalents are generally limited to those "created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002).

There are several important *legal* restrictions on whether a patentee can rely on equivalents to prove infringement, however. In particular, under the doctrine of Prosecution History Estoppel, equivalents *cannot* be used to recapture subject matter surrendered during prosecution, such as "when an applicant makes a narrowing amendment for purposes of patentability, or clearly and unmistakably surrenders subject matter by arguments made to an examiner." *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1344 (Fed. Cir. 2005). Equivalents also cannot be used to "vitiate" a claim limitation where the required structure is completely missing from the accused product. *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1360 (Fed. Cir. 1999) (precluding the doctrine of equivalents because plaintiff's infringement argument would "completely eradicate" the structural limitation of a means-plus-function claim).

### 2. Indirect Infringement

A defendant whose product includes fewer than all elements of a patent claim does not directly infringe, but may be found to "indirectly infringe" in limited circumstances proscribed by statute. Specifically, "inducement" under 35 U.S.C. § 271(b) requires knowingly and actively inducing another person to directly infringe the patent claim; and "contributory infringement" under 35 U.S.C. § 271(c) requires knowingly contributing to another person's direct infringement by supplying them a material part of the invention especially made for infringement and unsuitable for any substantial non-infringing use. Both require knowledge of the patent and intent to cause

1   another person to directly infringe.  *Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S.Ct. 2060, 2068

2   (2011).

3        Moreover, both inducement and contributory infringement also require proof of an actual

4   underlying act of direct infringement.  *Limelight Networks, Inc. v. Akamai Technologies, Inc.,* 134

5   S.Ct. 2111, 2115 (2014).  Just last week, in a holding directly relevant here, the US Supreme Court

6   reiterated that both inducement and contributory infringement *must be* predicated on an act of direct

7   infringement attributable to a single person, someone who in fact uses every element of the claims;

8   and that a defendant cannot be found to indirectly infringe without an actual direct infringement

9   under 271(a).  *Id.* (confirming that a "patentee's rights extend only to the claimed combination of

10  elements, and no further").  Importantly, the Supreme Court found that the Federal Circuit had erred

11  in considering "altered circumstances" of direct infringement from those which actually existed,

12  reversing the finding of infringement.  *Id.*

13  **V.      ARGUMENT**

14       **A.      Coupa Does Not Directly Infringe the '165 Patent, Literally or by Equivalents**

15            **1.      The Function of the "Order Generating Means" is Missing**

16       Literal infringement of a "means plus function" claim requires "that the relevant structure in

17  the accused device perform the *identical function* recited in the claim and be *identical or equivalent*

18  *to the corresponding structure* in the specification."  *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d

19  1259, 1267 (Fed. Cir. 1999) (emphasis added).  Thus, to prove literal infringement, Ariba must

20  demonstrate that the accused Coupa product performs the *identical* function claimed in the patent.

21  *Ring & Pinion Serv. Inc. v. ARB Corp. Ltd.,* 743 F.3d 831, 835 (Fed. Cir. 2014).  Structural

22  equivalence exists "only if the accused structure performs the *identical* function 'in substantially the

23  same way, with substantially the same result.'"  *General Protecht Group, Inc. v. International*

24  *Trade Com'n*, 619 F.3d 1303, 1312 (Fed. Cir. 2010).

25            **a.      The Coupa Software Always Generates a Purchase Order**

26       The Coupa Product automatically generates a Purchase Order immediately every time a

27  requisition is approved.  Coupa then sends the Purchase Order directly to a supplier via email,

28  cXML, EDI (integration) or manually (prompt) based on settings in the PO Transmission Method

field in the supplier profile. Coupa never sends a requisition directly to a supplier, and it never decides to selectively send some requisitions to an ERP system to generate the Purchase Order since it is immediately generated in Coupa every time. There is no function, configuration, setting or code in the Coupa Product to enable a Coupa customer to do this. The PO Transmission Method field has nothing to do with ERP integration. And Coupa has never written or supported integration code that checks the PO Method field or transmission status to selectively pull some POs into an ERP system and not others.

There is no *genuine* dispute that the Coupa Product is missing the function of the "order generating means" for selectively deciding between the specified set of ordering modules, and therefore does not literally infringe the '165 patent. Ariba's Infringement Contentions and response to Coupa's Interrogatory No. 11 makes this clear and undisputed. Interrogatory No. 11 asked Ariba for facts and evidence supporting its contention that the Coupa software "functions to decide between sending an order directly or through an ERP system by checking the 'PO Transmission Method' field in the supplier profile."[68] In response, Ariba did not state the Coupa software itself did this, but only that "***an ERP or other software can use this information***" to filter orders only from certain suppliers, and that using APIs "***an ERP or other software can selectively pull***" those orders only for suppliers whose PO Method is set to integration or prompt.[69]

This fails to prove direct infringement by the Coupa Product as a matter of law. As an initial matter, Ariba relies at the outset on the "***PO*** Transmission Method" and deciding to send "***an order*** directly or through ERP," *not* a requisition. Thus, the function of the order generating means is not literally present, even under Ariba's theory, since an *order* is not a *requisition*.[70] But Ariba's theory that ***"ERP or other software can"*** perform the function of filtering by PO Method and selectively pulling POs for some suppliers and not others fails as a matter of law, because the Coupa product cannot perform this way without modification by the end-user. Judges of this Court and the Federal Circuit have squarely rejected this theory of direct infringement, and the Supreme Court's decision last week in *Limelight* provided highly relevant guidance on this point as well.

---

68 Ex. T (Ariba May 14, 2014, Response to Interrogatory 11).
69 *Id.* at 5:10-17.
70 Ex. B (Order) 18:17-19, 19:3-5.

In *Nazomi v. Nokia*, Judge Ronald Whyte of this Court granted summary judgment of non-infringement under nearly identical *circumstances* as those here, and the Federal Circuit just recently affirmed. *Nazomi Communications, Inc. v. Nokia Corp.*, 2012 WL 3536768 (CAND Case No. 10-CV-04686-RMW), *aff'd Nazomi Communications, Inc. v. Nokia Corp.*, 739 F.3d 1339, 1345 (Fed. Cir. 2014)).[71] There, dormant code existed in circuitry found in defendants' products which could optionally be used only by installing additional JTEK software to activate it and make use of its instructions. *Nazomi,* 2012 WL 3536768 at *2. Judge Whyte held that the Federal Circuit has made clear that "the scope of an apparatus claim phrased in functional terms is generally limited to products 'configured' to perform the recited functions *without 'modification' by an end user.*" *Id*. at *5 (emphasis added). At most, the record indicated the accused devices contained hardware that could, in theory, be used to infringe. *Id*. at *6. However, since the accused products could not function as specified in the claims without modification through additional JTEK software not present in the accused products, summary judgment of no direct infringement was granted. *Id*.

In January of this year the Federal Circuit affirmed. The Court reiterated that to infringe a computer-implemented apparatus claim "claimed in functional terms," the accused product must be "designed in such a way as to enable the user of that product to utilize the function *without having to modify the product.*" *Nazomi v. Nokia*, 739 F.3d at 1345 (internal quotations omitted) (emphasis in original). *Nazomi* had argued on appeal that installation of the additional software is not a "modification" that precludes a finding of infringement. *Id*. But the Federal Circuit disagreed: "The purchase and installation of the [additional] software clearly constitutes a 'modification' of the accused products." *Id*. *Nazomi* also argued the accused devices infringed "if they have the capability of being configured or programmed to perform the stated function." *Id*. But again the court disagreed, finding the accused device must be presently structured to infringe the asserted claims – "that the enumerated functions served as claim limitations. Here, as in *Typhoon*, the products sold by [defendants] do not infringe without modification – the modification of installing the required software." *Id* at 1346.

---

[71]   Ex. V (*Nazomi* District Court opinion)

Here, by Ariba's own admissions, the Coupa software does not perform the function of the order generating means. Rather, Ariba alleges the Coupa software "*can be used*" to send a PO to a supplier by way of an ERP.[72] In the very next sentence, Ariba acknowledges the Coupa software can only decide to automatically send a PO directly to a supplier *or to not to send it at all*: "When the dropdown for the PO Method field of the Supplier Profile is set to 'Integration' or 'Prompt,' *the Coupa e-Procurement system does not send an order directly to a supplier*").[73] Rather, Ariba contends that "*an ERP or other software can use*" this information to filter and selectively pull POs from suppliers "using the API."[74] But like the dormant circuitry in *Nazomi*, both the data and the API in Coupa are dormant and do nothing by themselves.[75] There is also no evidence that Coupa or any of its customers have ever actually implemented a system in this way.[76] As in *Nazomi*, this precludes a finding of direct infringement as a matter of law, and the Court need go no further to grant summary judgment.

### b. There is No Direct Order Module to Choose From

Another basis for granting summary judgment is the undisputed absence of a Direct Order Module. The function of the "order generating means" includes deciding between a set of modules that includes at least one Direct Order Module. The Court construed "Direct Order Module" to mean "an ordering module that transmits a *requisition* directly to a supplier for fulfillment based on a direct order agreement between the company and the supplier, without storing the requisition in an ERP system."[77] The Court expressly declined Ariba's request to construe the Direct Order Module as permitting transmission of an *order*, instead of a *requisition*.[78] The accused Coupa software never decides between a set of ordering modules that includes a Direct Order Module, because the Coupa software only transmits purchase orders to suppliers, never *requisitions*.[79]

---

[72] Ex. T (Response to Rog 11 at 5:12-17).
[73] *Id.* 4:25-5:2; *See also* Ex. N (Thakur I) at 102:12-25, 103:9-17, 103:23-104:13; Ex. H (Thakur II) at 35:15-37:11, 242:21-243:16.
[74] Ex. T (Response to Rog 11) at 5:12-17.
[75] Ex. H (Thakur II) at 180:19-181:6, 218:17-25, 219:17-21, 220:3-11; Ex. G (Williams) at 297:17-298:16.
[76] Ex. G (Williams) at 62:4-63:4, 79:6-80:5, 297:17-298:16; Ex. H (Thakur II) at 239:17-241:1; 243:3-16.
[77] Ex. B (Order) at 18.
[78] *Id.* at 18:17-19 and 19:2-5.
[79] Ex. A ('165 Patent); Ex. N (Thakur I) at 249:4-9.

Ariba's contentions acknowledge this as an undisputed fact but simply refuse to concede that a Purchase Order is not a requisition, notwithstanding this Court's clear ruling to the contrary. Ariba's argument depends entirely on conflating a requisition with a purchase order, or at least finding them equivalent; which the plain language of the claim, the Court's Claim Construction Order, the '165 specification and the prosecution history estoppel all make clear cannot be done. Specifically, as noted above, for the Direct Order module Ariba relies at the outset on the "*PO Transmission Method*" and says the Coupa software has code "to transmit an *order*" based on a direct order agreement, but cites documents saying "the requisition is approved in Coupa and *the Purchase Order is sent to the supplier* from Coupa."[80] In arguing yet again that a requisition and order are interchangeable, Ariba concedes that "[e]ven if the Court determines that *the 'purchase order' sent by the Coupa system* is not a 'requisition,'" the difference is insubstantial, contrary to its representation to the Patent Office during prosecution.[81] Accordingly, it is undisputed that the function of the "order generating means" is not literally present in the accused Coupa software, because Coupa does not decide between a set of ordering modules that includes at least one Direct Order Module.

### c. There is No "Purchase Order Module" to Choose From

### i. Purchase Orders are Created in Coupa

The absence of a Purchase Order Module provides another independent basis for summary judgment. The function of the "order generating means" includes deciding between a set of modules that also includes at least one Purchase Order Module. The Court construed "Purchase Order Module" to mean "an ordering module that transmits a *requisition* to an ERP system, for generating a purchase order."[82] The Court declined Ariba's request to construe the Purchase Order Module as including a standalone embodiment that itself generates purchase orders, rather than sending the requisition to an ERP system which in turn generates a purchase order.[83] The accused Coupa software never decides between a set of ordering modules that includes a Purchase Order

---

[80] Ex. S (Amended Contentions) at 74-76; *see also id.* at 77 ("Thus Coupa supports transmitting an order directly to a supplier.").
[81] *Id.* at 81 & 84.
[82] Ex. B (Order) at 16.
[83] *Id.* at 16:10-12 and 16:14-17:27.

Module, because the stable Coupa Product always generates a Purchase Order itself, and never transmits a requisition to an ERP system to in turn generate the purchase order.[84]

As with the Direct Order Module, Ariba's contentions and response to Interrogatory No. 11 rely on treating requisitions and purchase orders interchangeably, or arguing they are equivalent. As with the Direct Order Module, Ariba relies on the "*PO* Transmission Method" to "transmit requisition *information*," which it argues is equivalent.[85] Yet Ariba again concedes for the alleged Purchase Order Module that "[e]ven if the Court determines that *the 'purchase order' sent by the Coupa system* is not a 'requisition,'" the difference is insubstantial, acknowledging Coupa only decides how to send a purchase order, and once again trying to recapture what it gave up during prosecution before the PTO.[86] Accordingly, it is undisputed that the function of the "order generating means" is not literally present in the accused Coupa software, because Coupa also does not decide between a set of ordering modules that includes at least one Purchase Order Module. This is a third independent ground on which the Court should grant summary judgment of non-infringement.

      **ii.**     **The ▮▮▮ Custom Software does not create a genuine dispute concerning the Purchase Order Module**

Ariba relies on a cartoon figure in an early marketing document as suggesting an Implementation option of sending a requisition from Coupa to an ERP system, and the purchase order being created in ERP.[87] The undisputed testimony, however, is that this refers to the ▮▮▮ Custom Software, not the stable Coupa Product.[88] The requisition only option is not available in the stable Coupa Product,[89] which never transmits a requisition to an ERP system for generating a purchase order.[90] Even if the cartoon depiction were sufficiently technical to consider, it still

---

[84] This is distinguished from the ▮▮▮ Custom Software discussed below, which also does not choose ordering modules since that custom code implementation sends *all* requisitions to ERP, and none from Coupa. *See also* Ex. G (Williams) at 160:10-161:4, 161:19-162:21; Ex. N (Thakur I) at 248:2-18.

[85] Ex. S (Amended Contentions) at 81 and fn. 10.

[86] *Id.* at 81 & 84.

[87] Ex. W (Implementation Options), COUPA0003522-524.

[88] Ex. G (Williams) at 215:7-13; Ex. N (Thakur I) at 142:20-143:21; Ex. H (Thakur II) at 24:1-14, 24:23-25:22, 30:16-24, 31:23-32:19, 97:6-18.

[89] Ex. N (Thakur I), at 140:9-143:21; *see also* Ex. G (Williams) at 215:7-13, 216:3-5, 222:11-223:8; Ex. H (Thakur II) at 30:13-24.

[90] Ex. N (Thakur I) at 248:15-18.

    COUPA'S NOTICE & MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT Case No. 3:12-cv-01484 WHO

depicts an "all or nothing" approach; it does not depict selectively deciding between different ordering modules to send some requisitions directly to a supplier, and other requisitions to an ERP to create a purchase order. This is insufficient to raise a genuine material dispute whether the accused Coupa software selectively decides from a set of ordering modules that includes at least one Purchase Order Module.

### d. Coupa does not infringe under the Doctrine of Equivalents

#### i. Prosecution History Estoppel applies to bar treating "purchase orders" and "requisitions" as equivalent

There is no genuine dispute Coupa does not perform the identical function of the order generating means as construed by the Court. Nor can Coupa be found to infringe under the doctrine of equivalents as a matter of law. If the function is not identical, infringement under the doctrine of equivalents may be possible, but only if the accused product performs substantially the same function and no restrictions on equivalents apply. *Ring,* 743 F.3d at 835. Here, to satisfy the function of the order generating means, Ariba again relies on "purchase orders" and "requisitions" being equivalent. This argument is barred by the doctrine of prosecution history estoppel, however, because it conflicts with Ariba's arguments to the US Patent Office.

Prosecution history estoppel prevents a patentee from relying on equivalents to prove infringement "when an applicant makes a narrowing amendment for purposes of patentability, or clearly and unmistakably surrenders subject matter by arguments made to an examiner." *Salazar,* 414 F.3d at 1344; *see also Alpex Computer Corp. v. Nintendo Co.,* 102 F.3d 1214, 1221–22 (Fed. Cir. 1996) (prosecution history estoppel applies with equal force to structural equivalents in a MPF limitations). The doctrine is intended to "prevent a patentee from using the doctrine of equivalents to recapture subject matter surrendered from the literal scope of a claim during prosecution." *Trading Tech. Intern., Inc. v. Open E Cry, LLC,* 728 F.3d 1309, 1322 (Fed. Cir. 2013).

This is precisely the case here. Prosecution history estoppel prevents Ariba from arguing that "requisitions" and "purchase orders" are equivalent for purposes of infringement. After a lengthy prosecution and numerous rejections over earlier e-procurement systems by IBM and others, Ariba was only able to secure allowance of the claims by making a narrowing amendment

adding the "order generating means" requiring a decision between the specified modules "to submit *the requisition* for fulfillment by a supplier," and by arguing and unmistakably surrendering from the claim scope systems that do not "choose a preferred ordering module *other than through a purchase order.*"[91] Time and again, Ariba cited excerpts from the prior art that described transmitting purchase orders, arguing that its claims were different.[92] Ariba cannot now argue that purchase orders and requisitions are equivalent, or that the Coupa system which does not decide between a preferred ordering method "*other than through a purchase order*" infringes. Prosecution history estoppel bars precisely this. Accordingly, Coupa also cannot be found to infringe under the doctrine of equivalents as a matter of law.

### 2. The Structure of the "Order Generating Means" is Missing

It is also undisputed that the accused Coupa software is missing the corresponding structure of the "order generating means," providing another independent basis for summary judgment. Ariba does not even contend that Coupa selectively chooses an ordering module for each requisition as the claims require; only that ERP or other software can use Coupa to selectively filter POs *by supplier* based on the PO Method field. This is because Ariba acknowledges the accused Coupa software is completely missing a key structural limitation of the "order generating means." Specifically, it is undisputed the Coupa software never checks the item template for a transfer method, because the item template in Coupa does not indicate a transfer method. The Court construed the corresponding structure of the "order generating means" as follows:

> "**Structure:**
>
> [1] 'For each fully approved requisition, [the system] verifies whether a p-card can be used for this purchase: Ensure that the supplier accepts p-cards. If not, chooses a different ordering module.'
>
> [2] '[The system] [c]hecks that **the transfer method has been designated** for direct order **in the item template.** If neither the purchase order (PO) or DO order module has been designated **in the item template** then the supplier profile will be checked for the transfer method. If the supplier profile indicates direct order, then that is the method. Otherwise, it is treated as a PO.'"[93]

As noted above, Ariba admits there is no structure in the Coupa software which "checks that

---

91  Ex. D at ARICOU00000518-535 (Jan. 19, 2005 Am. at 3, 10, 12, 14-15, 20).
92  *Id.*
93  Ex. B (Order) at 4-5 (citing the '165 Patent at 20:5-9, 21:7-14).

the transfer method has been designated for direct order in the item template" as the claim requires.[94] Ariba cites an exemplary Coupa item template, and concedes that it does not contain a transfer method designation: "This is so *even though the item template does not contain any transfer method designation field* ...."[95] Thus, the accused structure is not the same as the structure required under the Court's construction.

Nor does Coupa contain an equivalent structure. Ariba argues that even if the accused Coupa software is missing the structure of checking an item template, it uses equivalent structure sufficient for infringement of a means plus function limitation:

> "Specifically, the Coupa e-Procurement Software contains code that checks the item template *(which does not contain any transfer method designation in the Coupa system)* and checks the supplier profile to determine the PO Transmission Method...."[96]

But Ariba's argument simply reads the structure of checking the item template for a transfer method completely out of the claim. This is not equivalent to the corresponding structure as a matter of law, since equivalents cannot be used to vitiate claim requirements where structural limitations are completely missing. *Smiths Indus., supra,* 183 F.3d at 1360 (finding that infringement under the doctrine of equivalents is precluded because the plaintiff's infringement argument would "completely eradicate" the structural limitation of a means-plus-function claim).

Moreover, for all the reasons stated above, checking the supplier profile for different ways to transmit a *purchase order* cannot be found equivalent as a matter of law to checking the supplier profile for whether to use a DO or PO Module, the next required step in the Court's construction. Prosecution history estoppel applies to bar this argument. Accordingly, there is no genuine dispute that the corresponding structure of the "order generating means" is missing from the Coupa product, providing another independent ground for summary judgment of non-infringement.

**B.    Coupa Does Not Indirectly Infringe the '165 Patent**

**1.    There Is No Underlying Act of Direct Infringement**

Absent direct infringement of the claims of a patent, there can be neither contributory infringement nor inducement of infringement. *Limelight,* 134 S.Ct. 2111, 2115 (2014); *see also e.g.*

---

[94] Ex. S (Amended Contentions) at 62 (emphasis added).
[95] *Id.* at 64.

*Carborundum Co. v. Molten Metal Equipment Innovations, Inc.,* 72 F.3d 872, 876 at n.4 (Fed. Cir. 1995) ("Absent direct infringement of the claims of a patent, there can be neither contributory infringement nor inducement of infringement.") Coupa's software, even if combined with "ERP or other software" in the manner alleged by Ariba, would still not directly infringe for all of the reasons stated above. Absent direct infringement, there can be no indirect infringement.

But importantly, particularly in view of *Nazomi* and *Limelight*, there also is no indirect infringement as a matter of law even if all of Ariba's other arguments somehow survived, because no one has actually used the APIs in Coupa to implement the modifications Ariba claims would infringe. At best, Ariba's position is that Coupa's customers could *theoretically* add additional ERP or other software to use dormant APIs in Coupa to filter orders by supplier and selectively send orders to some suppliers directly from Coupa, and orders to other suppliers via ERP. No integration code Coupa has ever written, owns or controls operates in the way described by Ariba in response to Interrogatory No. 11. Nor is there any evidence that any Coupa customer has ever actually added ERP or other software that uses the Coupa APIs to function in the way alleged by Ariba to infringe. Doing so would be contrary to the design intent of the product and in conflict with Coupa's recommended practices. *Limelight* confirmed that conduct which would be infringing "in altered circumstances" cannot form the basis for contributory infringement, and *Nazomi* held that a theoretical possibility that a system could be used to infringe is not enough to withstand summary judgment. *Limelight,* 134 S.Ct. 2111, 2115 (2014) at 7; *Nazomi*, 2012 WL 3536768 at *6. In short, a defendant cannot be liable for contributing or inducing "infringement that never came to pass." *Id.* Here, as a matter of law, Coupa cannot be found liable for indirect infringement based on "altered circumstances" that do not exist.

### 2. The Other Elements of Indirect Infringement Are Not Met

Coupa is designed to automatically generate one or more purchase orders immediately when a requisition is approved, and to send all purchase orders to suppliers from Coupa. Ariba has no evidence that Coupa has induced any customer to selectively decide to send some requisitions directly to suppliers, and others to an ERP to create a purchase order. Nor is there evidence Coupa

---

[96] *Id.* at 62.

1  sells its products adapted to be used in this manner and no other way. Coupa therefore cannot be

2  found to have intended others to infringe, and these essential elements of indirect infringement

3  under 35 U.S.C. §§ 271 (b) and (c) are missing. Moreover, it is undisputed that Coupa had no pre-

4  suit knowledge of the '165 patent, a prerequisite to indirect infringement under either section. In

5  the absence of knowledge of the patent, there can be no indirect infringement as a matter of law.

6  **VI.    CONCLUSION**

7      Ariba cannot meet its burden to prove it is more likely than not that the accused Coupa

8  software includes the function or corresponding structure of the "order generating means," and no

9  reasonable jury could return a verdict of infringement in Ariba's favor. Instead, the disputed issues

10 are legal ones that can only be resolved in Coupa's favor. Summary judgment of non-infringement

11 as to all asserted claims should therefore be granted.

12

13 Dated:  June 18, 2014                    FISH & RICHARDSON P.C.

14

15                                          By:  */s/ Enrique D. Duarte*
                                                Kelly C. Hunsaker (SBN 168307)
16                                              hunsaker@fr.com
                                                Enrique D. Duarte (SNB 247523)
17                                              duarte@fr.com
                                                Thomas B. Manuel (SBN 254186)
18                                              manuel@fr.com
                                                FISH & RICHARDSON P.C.
19                                              500 Arguello Street, Suite 500
                                                Redwood City, California 94063
20                                              Telephone:  (650) 839-5070
                                                Facsimile:  (650) 839-5071
21

22                                          Attorneys for Defendant
23                                          COUPA SOFTWARE, INC.

24 50952935.doc

25

26

27

28